937 F.2d 953
 1992 A.M.C. 2908, Prod.Liab.Rep.(CCH)P 12,952
 Margaret E. VAUGHN, Personal Representative of the Estate of
Bernice W. Vaughn, Jr., Deceased; Margaret E.
Vaughn, Plaintiffs,
v.
FARRELL LINES, INC., for itself, and as Successor to
American Export Lines, Inc., Chevron, U.S.A., Inc.,
Successor to Gulf Oil Corporation, Isco, Inc., Successor to
States Marine Lines, Keystone Shipping Company, Amoco Oil
Company, Texaco, Inc., a Delaware Corporation, Defendants-Appellees.
and
MARINE TRANSPORT LINES, INC., Central Gulf Lines, Inc.,
Lykes Brothers Steamship Company, Inc., United Brands
Company, Successor to United Fruit Company, a New Jersey
Corporation; Trinidad Corporation, Defendants,
v.
FOSTER WHEELER CORPORATION, Third-Party Defendant-Appellant,
and
Armstrong Contract & Supply, Inc., a/k/a A C and S, Inc.,
A.P. Green Refractories Company, Armstrong Cork Company,
Armstrong World Industries, Inc., Babcock & Wilcox Co.,
Carey Canada, Inc., Celotex Corporation, Combustion
Engineering Inc., Eagle-Picher Industries, Inc., Fibreboard
Corporation, GAF Corporation, H.K. Porter Company, Inc.,
Keene Corporation, National Gypsum Company, Owens-Corning
Fiberglass Corporation, OCG, Inc., formerly known as
Owens-Illinois Glass Company, Pittsburgh Corning
Corporation, Raymark Industries, Inc., Turner & Newall, PLC,
XYZ Companies (John Doe Third-Party Defendants), Third-Party
Defendants.
 No. 89-2221.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 7, 1990.
Decided June 20, 1991.
 
 James Wilson Bartlett, III, argued (Aaron I. Lubling, on brief), Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, Md., for third-party defendant-appellant.
 John Thomas Ward, argued (Kathryn Miller Goldman, on brief), Quinn, Ward and Kershaw, P.A., Baltimore, Md., for defendants-appellees.
 Before WIDENER and SPROUSE, Circuit Judges, and TILLEY, District Judge for the Middle District of North Carolina, sitting by designation.
 WIDENER, Circuit Judge:
 
 
 1
 This appeal arises from a judgment for indemnity against the third-party defendant, Foster Wheeler Corporation, by Farrell Lines and five other United States flag shipowners (shipowners). The district court, after a bench trial, held that the shipowners were entitled to recover on their claim for indemnity. 723 F.Supp. 1126. It also held that Foster Wheeler was not entitled to recover on certain of its cross claims against other third-party defendants. We affirm in part, reverse in part, and remand.
 
 I.
 
 2
 This controversy originated in an action instituted against the shipowners by the wife of a seaman for damages occasioned by his death from the asbestos related disease of mesothelioma. The decedent, Vaughn, was a seaman who worked for most of his career as a fireman/watertender, engineman, oiler and wiper on various vessels owned by U.S. flag shipowners. During the course of his employment he was exposed to the asbestos, which caused his death, in the boilers and engine rooms of the vessels in which he served. His wife, on her own behalf and as the representative of the estate, brought suit against the shipowners, asserting claims for unseaworthiness, as well as claims under the Jones Act.
 
 
 3
 The shipowners brought in as third-party defendants the manufacturers of the asbestos products involved and the boilers (containing asbestos insulation) that had been used on their ships. They sought indemnification. The shipowners tendered defense of plaintiff's claims to the third-party defendants and, pursuant to Federal Rules of Civil Procedure 14(c), demanded judgment in favor of the plaintiff against the third-party defendants.[1]
 
 
 4
 Prior to trial, the plaintiff settled with the shipowners and all of the third-party defendants with the exception of appellant Foster Wheeler. The settlement provided for payment of $316,500 to be paid by the settling defendants in varying amounts. The share of the shipowners whose vessels contained Foster Wheeler boilers amounted to $54,883.17.[2] The plaintiff gave releases to the shipowners and to all third-party defendants, except, of course, Foster Wheeler. The releases did not contain a provision which released Foster Wheeler from liability. On the day of trial, Foster Wheeler settled with the plaintiff, for the amount of $4,000, and obtained a release.
 
 
 5
 In the non-jury trial which followed, the six shipowners whose vessels were equipped with Foster Wheeler boilers claimed indemnity against Foster Wheeler for the full amount they paid in settlement of plaintiff's claim, as well as for their attorneys' fees.
 
 
 6
 At the indemnity trial, Foster Wheeler alleged in its defense that the shipowners negligently increased the seaman's exposure to the asbestos by improper operational practices which caused the boilers to be repaired more frequently than would otherwise be necessary, and by performing repairs on the boilers at sea, which should have been performed at shipyards. The district court, in its oral opinion dated March 31, 1989, found that the presence of asbestos insulation in the Foster Wheeler boilers on the vessels in question caused the vessels to be unseaworthy and that Foster Wheeler had not proven its claims of wrongdoing against the shipowners. In its later written opinion, these findings were confirmed and the additional finding was made that the amount that the shipowners paid to the plaintiff in settlement of the underlying action was reasonable.[3]
 
 
 7
 In its separate order dated October 18, 1989 the court entered judgment in favor of the shipowners and against Foster Wheeler in the amount of $72,883.17 which represented the full amount the six shipowners who sought indemnity from Foster Wheeler paid to plaintiff plus their attorneys' fees.
 
 
 8
 It is from this judgment that Foster Wheeler appeals.
 
 II.
 
 9
 Before we address the merits, we must first determine whether the shipowners' indemnity claim should be considered in admiralty. This court has previously recognized that "[a]ny noncontractual right to indemnity in respect of established tort liability arises out of the tortious conduct upon which the indemnitee's liability was established." White v. Johns-Manville Corp., 662 F.2d 243, 247 (4th Cir.1981). We have determined that the underlying tort claims from which the indemnity claim is derived in this action are maritime tort claims to be adjudicated under federal admiralty jurisdiction. Therefore, "[a] noncontractual indemnity claim arising therefrom is similarly a maritime claim." White, 662 F.2d at 247. Accordingly, we assess the shipowners' claim for indemnity under principles of maritime law.
 
 III.
 
 10
 The principal issue presented by this appeal is whether non-contractual indemnity is available after a settlement when the proposed indemnitor was notified of the underlying claim and tendered the defense, but refused to participate in the settlement.[4] We are of opinion that indemnity will be permitted on such a settled claim where four elements are established. First, the party seeking indemnity must initially show that an indemnitor-indemnitee relationship existed between itself and the proposed indemnitor. See e.g., Parfait v. Jahncke Service, Inc., 484 F.2d 296, 301 (5th Cir.1973), cert. denied, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974). Second, the indemnitee must demonstrate that it was under some compulsion to satisfy the claim of the original plaintiff. Glover v. Johns-Manville Corp., 662 F.2d 225, 229-30 (4th Cir.1981); Parfait, 484 F.2d at 303-05. Third, the indemnitee must prove that its settlement with the plaintiff in the underlying action was reasonable. Glover, 662 F.2d at 230; Parfait, 484 F.2d at 303-05; see also Wisconsin Barge Line, Inc. v. Barge CHEM 300, 546 F.2d 1125, 1129-30 (5th Cir.1977). Finally, the indemnitee must show that the unlawful action of the indemnitor proximately caused the injury to the original plaintiff. It is not sufficient that compulsion for the indemnitee to satisfy the plaintiff's claim be shown. The indemnitor "is entitled to try the question of its own [wrongdoing]." Maritime Overseas Corporation v. United States, 608 F.2d 1260, 1261 (9th Cir.1979).
 
 
 11
 We first address the showing the shipowners must make that an indemnitee-indemnitor relationship existed between themselves and Foster Wheeler. Parfait, 484 F.2d at 301. In the underlying action, the plaintiff's claims were based on theories of unseaworthiness, negligence, and strict liability. Therefore, the shipowners, through their third-party action for indemnity, can seek to transfer the ultimate liability to Foster Wheeler on the theory that Foster Wheeler was guilty of active or primary wrongdoing while they were innocent, or only passively or secondarily liable. This theory of indemnity is recognized in admiralty. See e.g., White v. Johns-Manville Corp., 662 F.2d 243, 249 (4th Cir.1981); Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir.1969). It applies a principle of restitution to the situation where one person discharges liability that has been imposed on him by operation of law, but which should have been discharged by another. White, 662 F.2d at 249.
 
 
 12
 This active-passive theory typically arises when the indemnitee has been held absolutely liable for the wrongful act of another as in an "admiralty context where a shipowner held liable on an unseaworthiness claim is awarded indemnity against a third party whose negligence caused the unsafe condition resulting in injury to a seaman." White, 662 F.2d at 249; see also Simpson Timber Co. v. Parks, 390 F.2d 353 (9th Cir.), cert. denied, 393 U.S. 858, 89 S.Ct. 130, 21 L.Ed.2d 127 (1968). It was in almost this same context that the shipowners' right to indemnity arose in this case. In the indemnity trial, the district court found that the presence of asbestos insulation in the boilers manufactured by Foster Wheeler on shipowners' vessels rendered them unseaworthy; that such unseaworthiness caused the shipowners' to become liable to seaman Vaughn; and that the shipowners were not themselves guilty of negligence which either exacerbated the injuries or the likelihood thereof.
 
 
 13
 Accordingly, because Foster Wheeler was an active wrongdoer in supplying defective boilers to the shipowners, and the shipowners were found not to have been guilty of wrongdoing themselves, the indemnity theory of active versus passive wrongdoing was properly used to place the ultimate burden on Foster Wheeler, the party whose wrongdoing actually occasioned the loss.
 
 
 14
 Second, to assert a claim for indemnity an indemnitee "must demonstrate that it was under some compulsion to satisfy the claim of the original plaintiff." Glover v. Johns-Manville Corp., 662 F.2d 225, 229-30 (4th Cir.1981). In this case, the district court found that a cause of Vaughn's illness was asbestos from the Foster Wheeler boilers which had rendered the vessels unseaworthy. That finding of proximate cause is not clearly erroneous, so the requirement that the vessels be under compulsion to satisfy Vaughn's claim is satisfied.
 
 
 15
 Next, the party seeking indemnity must demonstrate that the settlement it reached was reasonable. Glover, 662 F.2d at 230. The district court in this case found the settlement to be reasonable in amount[5] and Foster Wheeler does not take issue on appeal with that finding, so we will let that matter stand as a reasonable settlement without further discussion.
 
 
 16
 Resolution of the fourth requirement to find liability on Foster Wheeler in this case is a question not squarely faced before in this circuit and hardly elsewhere. The two indemnity cases we have considered previously that are most similar to this one, White v. Johns-Manville Corp., 662 F.2d 243, 249 (4th Cir.1981), and Glover v. Johns-Manville Corp., 662 F.2d 225, 229-30 (4th Cir.1981), both originated in suits by an injured plaintiff against manufacturers of defective chattels with the manufacturers seeking indemnity. And in Jennings v. United States, 374 F.2d 983 (4th Cir.1967), the suit originated in a claim by an injured plaintiff against an indemnitee later proven to be innocent of wrongdoing. Although had the instant case continued to trial, the existence and extent of liability on the part of the shipowners would have been judicially ascertained, as well as the existence and extent of liability on the part of the boiler manufacturers and the asbestos manufacturers; outside the trial of the indemnity action none of that has been ascertained or decided in this case other than by agreement. It is at once apparent that both the existence of liability and the amount of it may not simply be imposed on Foster Wheeler without its consent.
 
 
 17
 This is not to say, however, that all the proceedings in the district court are for naught, for significant parts of the case will stand and not require re-examination on remand. The case we have found most similar to the one at hand is Maritime Overseas Corp. v. United States, 608 F.2d 1260 (9th Cir.1979). In that respect, we also refer to the opinion of the district court in the same case reported in 433 F.Supp. 419 (N.D.Cal.1977) for its statement of facts as well as for the purpose of placing the decision of the court of appeals in its proper setting. While Maritime Overseas did not concern defective chattels furnished to a ship, it did concern defective service furnished to a ship, which service, as did the chattels here, caused injury to a seaman. The district court was reversed in that case because it only required a colorable claim to be proven against the furnisher of services from whom indemnity was sought. But that is not the case here. The opinion of the district court relates that the boiler manufacturers were liable under the doctrine of strict liability in tort and justified the fixing of indemnification liability on Foster Wheeler for that reason, among others. Our application of the rule in Maritime Overseas is entirely consistent with our reasoning in White, 662 F.2d at 249, that a condition for liability in a non-contractual indemnity claim, as here, is where one person discharges liability that has been imposed on him by operation of law but which should have been discharged by another; and our similar statement in Jennings, 374 F.2d at 987, that the indemnitee must prove that his liability is of such a character that in spite of it, he may recover from the indemnitor. Both these statements, that liability should be satisfied by another, are reflected in the concise language of Maritime Overseas that "[t]he ... indemnitor is entitled to try the question of its own fault." 608 F.2d at 1261. The only interpolation required to apply that language to this case is to substitute "wrongdoing" for "fault" because of the district court's holding that strict liability was the basis for holding Foster Wheeler liable as an indemnitor.
 
 
 18
 Accordingly, we affirm the judgment of the district court that Foster Wheeler is liable as indemnitor to the shipowners. That does not end the case, however, as we continue.
 
 IV.
 
 19
 Although we affirm that portion of the district court's opinion permitting the shipowners' indemnity from Foster Wheeler, we remand for a determination of the portion of that settlement amount that is properly attributed to vessels with Foster Wheeler boilers, for which Foster Wheeler should be accountable as indemnitor.[6]
 
 
 20
 The district court awarded the shipowners indemnity for the full sum they contributed to the settlement of Vaughn's claim, $54,883.17, plus attorney's fees of $18,000, bringing the total indemnity award to $72,883.17. This amount was calculated by requiring each individual vessel owner to pay a portion of the vessel owners' share of the settlement as determined by comparing Vaughn's days at sea to the number of days Vaughn served on their individual vessels.
 
 
 21
 Foster Wheeler contends, however, that only a portion of the shipowners' vessels, some eleven out of twenty-five it is claimed, were equipped with Foster Wheeler boilers, whereas each shipowner's percentage of the settlement included days Vaughn served on vessels not equipped with Foster Wheeler boilers. Thus, Foster Wheeler argues, only a part of the sum paid by the shipowners should be properly recovered by the shipowners in their indemnity action.
 
 
 22
 We find this reasoning persuasive. We are of opinion that Foster Wheeler should only be required to indemnify the shipowners for damages occasioned by its own wrongdoing, not that of other boiler manufacturers. Thus, on remand, any amount paid by the shipowners that is attributable to Vaughn's service on vessels with other than Foster Wheeler boilers should be deducted from the indemnity award, with a corresponding reduction in attorney's fees.
 
 
 23
 Foster Wheeler also raises the related issue of the district court's refusal to allow it any reduction in the amount of its liability under either the settlement agreement between Vaughn and the other defendants, or principles of indemnity or contribution. The district court based this denial on its construction of an approach to multi-defendant settlement agreements contained in the Restatement (Second) of Torts Sec. 886A comment m (1979).
 
 
 24
 We should say at the outset that because of our decision to reduce the amount of indemnification owed by Foster Wheeler to that attributable to its own boilers, that there is no longer any issue as to contribution or indemnification owed to Foster Wheeler by the other boiler manufacturers, as distinguished from asbestos manufacturers. That issue is now moot.
 
 
 25
 Section 886A of the Restatement outlines "three possible solutions[7] for the situation in which one tortfeasor pays a sum to the injured party and takes a release or covenant not to sue that does not purport to be a full satisfaction of the claim." The district court adopted the second approach contained in this comment which provides that "the money paid extinguishes both any claims on the part of the injured party and any claim for contribution by another tortfeasor who had paid more than his equitable share of the obligation and seeks contribution." Restatement (Second) of Torts Sec. 886A comment m (1979).
 
 
 26
 As one reason for adopting this approach, the district court reasoned that "the public interest would be seriously harmed by requiring the substantial expenditure of limited judicial resources to resolve the wholly ancillary relative culpability question after the plaintiff herself had already been compensated through a settlement which she found acceptable." Although we are quite aware of the burdens of a heavy case load and do in fact sympathize with the trial court, such a consideration is an impermissible reason for denying an otherwise valid right to indemnity or contribution.
 
 
 27
 Second, the district court erroneously applied the approach selected to the parties in this case. The district court commented:
 
 
 28
 Here, of course, since the question arises in the context of the Shipowners' third-party claims, the Shipowners are to be considered as the "plaintiff," all of the manufacturers other than Foster Wheeler as the settling defendants and Foster Wheeler as the non-settling defendant.
 
 
 29
 However, as a preamble to the approaches contained in comment m quoted above indicates, the plaintiff referred to in these approaches is the injured party, Vaughn in our case, not the shipowners with Foster Wheeler boilers. So the application of Sec. 882A was in error for that additional reason.
 
 
 30
 Finally, the issue of any liability of the asbestos manufacturers on Foster Wheeler's crossclaims against them was severed and may be pursued by Foster Wheeler on remand if Foster Wheeler be so advised.
 
 
 31
 In sum, we affirm the finding of liability on the part of Foster Wheeler for indemnification of the shipowners, but we require a reduction in its amount upon remand as justified by the evidence and in accordance with this opinion. We hold the question of Foster Wheeler requiring contribution or indemnification from the other boiler manufacturers is now moot, and we hold that Foster Wheeler may pursue its cross-claims against the asbestos manufacturers.
 
 
 32
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Admiralty and Maritime Claims. When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff. Fed.R.Civ.P. 14(c)
 
 
 [2]
 The briefs discuss a de minimis difference of 40 cents in the share at different places in the record
 
 
 [3]
 The court rendered its initial written opinion on July 31, 1989. Both sides asked that that opinion be reconsidered. The court granted the shipowners' motion for reconsideration and denied the same motion of Foster Wheeler. The district court then withdrew its first written opinion and issued the opinion of October 18, 1989 in its place
 
 
 [4]
 The district court held that a Ryan-type indemnity was called for here. We do not agree. The indemnity held to exist in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), was based on contract. The Ryan court stated: "... we do not meet the question of a non-contractual type of indemnity...." 350 U.S. at 133, 76 S.Ct. at 237
 
 
 [5]
 Foster Wheeler does claim the settlement not reasonable so far as it resulted in Foster Wheeler having to pay more than its share of the loss. Our decision corrects that problem
 
 
 [6]
 A significant part of the boilers were those of Babcock & Wilcox
 
 
 [7]
 The Restatement comments on a caveat, p. 343, that each solution has its drawbacks and no one is satisfactory. This is illustrated by the fact that the 1939 uniform act adopted the first solution, the 1955 act the second solution, and the 1977 act the third solution. The Restatement, page 344, leaves the issue to a caveat and takes no position. It states, p. 344, and we agree, that "[i]mportant policy reasons therefore weigh against each of the three solutions."