**Volpe M. BOYKIN, Administrator of the Estate of Denzil J. Pereira, Plaintiff,**

v.

**BERGESEN D.Y. A/S, China Steel Corp., and U.S. Steel Mining Co., Inc., Defendants/Cross–Claimants.**

Civ. A. No. 2:92cv391.

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 19, 1994.

---

Jeffrey Arnold Breit, Breit, Drescher & Breit, Norfolk, VA, for plaintiff.

Denham Arthur Kelsey, John E. Holloway, Andrew Jackson Timms, Hunton & Williams, Norfolk, VA, for defendant, Bergesen D.Y. A/S.

Morton Hutchinson Clark, Carter T. Gunn, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for defendants, U.S. Steel Mining Co., Inc. and China Steel Corporation.

## OPINION AND ORDER

MORGAN, District Judge.

This matter was tried before the Court upon claims arising out of a maritime casualty aboard the merchant ship M/V BERGE CHARLOTTE. After various pretrial motions, the parties to this action at trial were as follows: Plaintiff Volpe M. Boykin ("Boykin") as administrator of the estate of Denzil J. Pereira ("Pereira") maintains a suit against Defendants U.S. Steel Mining Co., Inc. ("USS") and China Steel Corporation ("China Steel")[1] for damages related to Pereira's death. Defendant and Cross-claim Plaintiff Bergesen D.Y. A/S ("Bergesen"), the owner of the BERGE CHARLOTTE, maintains a claim against Cross-claim Defendants Steel for physical damage to the ship and related losses, and for contribution or indemnity for various payments made by Bergesen to other persons as a result of the incident. Plaintiff Boykin later dismissed with prejudice its claim against China Steel. Defendants Steel also cross-claim against Cross-claim Plaintiff Bergesen for any liability they owe to Plaintiff Boykin, and contend that any liability they have toward Cross-claim Plaintiff Bergesen should be reduced owing to Bergesen's comparative negligence.

Following the trial of this action, the Court concluded that Boykin and Bergesen had met their burden of establishing the negligence of the Steel Defendants in incorrectly categorizing the coal in the Number Three hold of the BERGE CHARLOTTE as Category A coal

---

1. Where the discussion applies equally to both USS and China Steel, the parties will be referred to collectively as "Steel."

instead of Category B coal, and for failing to warn of the dangerous propensities of that coal. The Court concluded that the defendants' negligence was a proximate cause of the explosion which resulted in the death of Plaintiff's decedent Pereira and others, and of damage to the vessel and related expenses. Although the Court was presented with numerous hypothetical scenarios as to how work by the crew might have provided a source of ignition, the Court ruled that it could not base a finding of comparative negligence on such speculation. Accordingly, the Court determined that the awards to Boykin and Bergesen would not be reduced under a comparative negligence theory.

Boykin and the Steel Defendants have filed motions to amend the Court's judgment pursuant to Fed.R.Civ.P. 59.

### DISCUSSION

■ Under Fed.R.Civ.P. 59(e), a party may, not later than ten days after entry of a judgment, make a motion to alter or amend the judgment. The purpose of such a motion is to call into question the correctness of the Court's judgment. *Dove v. CODESCO,* 569 F.2d 807, 809 (4th Cir.1978).

### 1. Boykin's Motion to Amend the Judgment

Boykin requests the Court to amend the judgment to reduce the percentage by which the Court reduced its award to Boykin; that reduction was made to reflect the amount of Pereira's earnings which Pereira would have spent on himself. Boykin contends that the Court erred in reducing Pereira's expected earnings by twenty-five percent (25%) to account for what Pereira would have spent for his own needs. That twenty-five percent figure represented the Court's estimate of the amount of Pereira's earnings which he would have spent on himself. In the Court's opinion of October 4, 1993, the Court noted that there was no evidence which would have led the Court to find a specific figure, and therefore the Court chose twenty-five percent under the assumption that Pereira

would have spent his earnings equally on himself, his wife, and his two children.[2]

Boykin asserts that there was evidence in the record to establish that Pereira spent little of his earnings on himself. He relies on two facts: first, Pereira was a ship's master who spent a great deal of time at sea and had many of his own needs, such as food and lodging, provided for him on board. *See, e.g., Law v. Sea Drilling Corp.,* 510 F.2d 242, 251 (5th Cir.1975) (making fifteen percent deduction from decedent's earnings on grounds that decedent had a company car and in consideration of wife's estimate of ten percent expenditure rate). Therefore, Boykin asserts that Pereira did not need to spend as much on himself as would another person.

Second, Boykin refers to the testimony of Anayat Mahabat, an acquaintance of Pereira's, who testified at trial about Pereira's devotion to his family. In particular, Boykin offers the following testimony as proof of the fact that Pereira did not spend equally on himself and his children. Mahabat stated: "Whatever money [Pereira] ... would spend he would spend with his family. His only hobby was his daughter and wife. ... never in his life he would spend that much money on himself as he would spend on his daughter." Accordingly, Boykin contends that, at most, the Court should only have deducted six or seven percent for Pereira's personal consumption.

■ Under the case law applying the Death on the High Seas Act, 46 U.S.C.S.Appx. §§ 761–768 (1987) ("DOHSA"), the Court should reduce a lost earnings award to the administrator of the decedent's estate by the amount the decedent would have spent on himself. *Tallentire v. Offshore Logistics, Inc.,* 800 F.2d 1390, 1392 (5th Cir. 1986) (reducing award by thirty-four percent on basis of evidence submitted in that case). The difficulty with the testimony offered by Boykin is that it contains no specific information about the family's finances or the needs of the children or Pereira, and there has been insufficient evidence presented as to

---

2. Specifically, the Court stated, "Because there is only scant evidence in the record on this point, the Court will assume that Pereira, as one of four members of his immediate family, would have consumed one-fourth of his earnings." Opinion and Order of October 4, 1993, at 28.

how the family's finances were arranged. The testifying witness did not state anything which suggested that he had knowledge of the family's finances.

The mere testimony of an acquaintance that Pereira would spend more money on his daughter than he would himself offers little help to the Court in terms of coming up with a specific percentage figure for each of the family members. Boykin's suggestion that the proper figure for Pereira's spending for himself is six percent (6%) comes out of thin air and has no more basis than the Court's figure of which Boykin complains.[3]

 The Steel Defendants responded briefly to Boykin's motion to amend. The Steel Defendants noted that the "... uncontroverted evidence in this case [established] that Denzil Pereira had been employed ashore as a marine superintendent in Hong Kong and Bombay for two years, prior to signing aboard the BERGE CHARLOTTE for one trip. Furthermore, his employment as captain of the BERGE CHARLOTTE was stated to be 'temporary'." (Reply of Steel at 1.) Therefore, the Steel Defendants contend it is inaccurate to suggest that Pereira had less need to spend on himself because many of his essentials were provided for him aboard vessels. The Steel Defendants further noted that Pereira had applied for employment ashore as a marine surveyor in Canada or the United States, and for that reason also he would not be aboard a vessel in the future.

The Court does not view the defendants' contention as a basis for refusing the motion to amend. First, the Court previously found that Pereira's application for employment in North America was too speculative a basis for an award of increased earnings. The Court will not now say that it was a sufficient basis for reducing the award of lost earnings. Second, the Steel defendants previously asserted that Pereira was absent at sea for

nine to ten months out of the year as a basis for contending that there was little evidence that Pereira's death resulted in great damages for loss of nurture. The Court will not now hear the defendants argue that Pereira was home most of the time as the basis for reduction of the award.

 However, while there is evidence in the record to establish that Pereira was a devoted father, there appears to be no specific evidence which provides this Court with a reliable figure for how much of Pereira's earnings were spent on each of his family members. The Court was aware of Mahabat's testimony when it entered judgment. The Court simply does not view this testimony as sufficient proof to depart from the presumption that the family's needs were roughly equal. The Court does not doubt that Pereira was a devoted family man, and it does not doubt the sincerity of the testifying witness. However, this testimony contains no specific information about the family's finances, the needs of the children or Pereira, and there has been no solid evidence presented as to how the family's finances were arranged. Therefore, the Court DENIES plaintiff's motion to amend the judgment.

## 2. Motion of Steel Defendants to Amend Judgment

The Steel defendants have filed a motion to amend the judgment on the grounds that the Court's judgment provided a double recovery for Boykin in the amount of $185,000. They contend that the Court ordered them to pay Boykin in full for Pereira's lost earnings, and to indemnify Bergesen for its payments to Boykin. Because $185,000 of Bergesen's payments to Boykin are alleged to represent Pereira's lost earnings, the Steel defendants contend Pereira has been paid twice for the same injury.

**3.** In accord with Mahabat's testimony, Pereira could still have spent twenty-five percent (25%) of his income on himself and spent more than twenty-five percent (25%) on his daughter, by having spent less on his other daughter and his wife. The testimony referred to by Boykin pertained only to Pereira and his eldest daughter. Therefore, if the Court were to accept Boykin's

invitation to adjust the award, the evidence presented by Boykin would be just as compelling for a reduction of the percentages attributed to Pereira's wife and youngest daughter as it would for a reduction of the percentage attributed to Pereira himself. It is certainly possible, after all, that different amounts were spent on the eldest nd youngest daughters and Pereira's widow.

On economic grounds, the Steel defendants appear to have a strong argument. It certainly appears that Boykin has been paid twice for the same injury, and that this is a classic case of double recovery. However, depending on which rule the court adopts as the method of credit or set-off, such a double recovery may not be contrary to law.

### A. General Rule Governing Credit or Set–Off

According to Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW, § 4–15 (1987):

> [i]f there are two or more defendants ... the plaintiff may negotiate a settlement agreement with one or more, reserving his rights against the remaining defendants. In such a case a settling defendant is relieved of any further liability to the plaintiff. In the remaining litigation with non-settling defendants, the court ... must determine the total amount of damages suffered and the percentage degrees of fault of all the defendants, including a settling defendant (citations omitted).

Schoenbaum states that the total liability of a non-settling defendant will be reduced *pro rata*, by the percentage of comparative negligence of the settling defendant multiplied by the total amount of the plaintiff's damages; the non-settling defendant is not entitled to a dollar-for-dollar credit (*pro tanto*) for the amount of the settlement. *Id.* However, the authorities cited in this treatise are cases from the Fifth and Eleventh Circuits decided prior to the decisions discussed *infra*, Section D.

Because the Court in this case found that the Steel defendants were one hundred percent at fault and that Bergesen was zero percent at fault, adoption of the *pro rata* rule would appear to prevent credit or set-off altogether and would allow Boykin double recovery. A *pro tanto* approach would credit the Steel defendants for the $185,000 which Bergesen paid to Boykin.

### B. Possible Waiver of Credit Issue by Steel Defendants

■ As an initial matter, Boykin asserts that "credit" is an affirmative defense which the Steel Defendants failed to plead, which is therefore waived. Credit is not an enumerated affirmative defense under Fed.R.Civ.P. 8(c), but Boykin offers *Worster Motor Lines, Inc. v. Lombardo*, 531 F.Supp. 106 (W.D.Pa. 1982) as a case in which the Court required that set-off in a contract dispute be affirmatively pleaded in the defendant's answer.

In support of Boykin's contention that the issue was never raised, Boykin offers the list of factual contentions and triable issues presented by the parties in the trial memorandum, which does not explicitly state that "credit" was a triable issue. However, the Steel defendants did assert that the extent of their liability was a triable issue. The Steel defendants also note that the papers finalizing the release between Boykin and Bergesen were not signed until several months after Boykin's action was filed; therefore, they should not have been expected to raise the credit issue in their responsive pleadings.

The trial memorandum provided by U.S. Steel states as issue four, "... what is the percentage of fault on the part of USSM which caused the death of Plaintiff's decedent?" Issue eight is offered as "What is the amount of damages, if any, the Plaintiff is entitled to recover in this case under the Death on the High Seas Act?" Issue nine is "Is Bergesen entitled to indemnity or contribution from USSM for damages resulting from the casualty?" Although the issue may not have been explicitly set forth, considering the complexity of the issues in this case, and the time frame in which the releases were signed, the Court FINDS that the Steel defendants have not waived the credit issue.

### C. Effect of Settlement Agreement on Method of Applying Credit

■ Boykin further contends that the release signed by Boykin and Bergesen establishes that the *pro rata* rule be applied, which in turn means that the Steel Defendants would not be entitled to credit or set-off. Boykin's contention is based on the release between Boykin and Bergesen, and language in United States District Judge Robert G. Doumar's prior opinion in this case, concerning U.S. Steel's action for con-

tribution against Bergesen, which stated, "Judgment will not be entered in favor of plaintiff against USSM for that share of the damages which correspond to Bergesen's percentage of liability in this case, if any." Order of May 27, 1993, p. 3. Thus, Boykin asserts that the *pro rata* rule was contemplated. The Court disagrees.

First, the Steel Defendants were not a party to the release, and it is difficult to see how an agreement between Boykin and Bergesen as to Boykin's waiver of joint and several liability binds the Steel defendants in any way. Second, the Court does not agree, as Boykin contends, that either the release agreement or Judge Doumar's prior order established that the *pro rata* method, as opposed to the *pro tanto* method, would be applied as the method of set-off or credit.

Boykin contends that the settlement agreement, which Judge Doumar held enforceable, contained a *Pierringer* release which was "favored" by U.S. Steel. Boykin claims that this release ensured that the Steel defendants would not be liable in excess of their proportionate fault, but Boykin does not explain how that has not occurred in this case. It is clear that the Steel defendants have had to pay twice for the same injury to Boykin.

Even assuming that the Steel defendants could be bound by the agreement, that agreement sets forth in a hypothetical that if the Court finds U.S. Steel one hundred percent responsible, plaintiff would be entitled to collect its full claim from U.S. Steel "... *reduced by whatever credit the Court may allow for Bergesen's prior payments* (emphasis added)." (Agreement, p. 4, ¶ 7, Pre-trial Exhibit 62). This language appears to contemplate that credit might be allowed to U.S. Steel. Although this language does not explicitly answer the question of which method of credit would be followed, as discussed *infra*, the practical effect of the rules is that when the Steel defendants are one hundred percent at fault, only the *pro tanto* method actually provides them with a credit. The language in this hypothetical could be construed to suggest that the *pro tanto* method would be applied, the opposite of Boykin's construction. Therefore, the Court does not

agree with Boykin that either the settlement agreements or Judge Doumar's prior ruling bind the Steel defendants to the *pro rata* approach.

### D. Current Status of the *Pro Rata* versus *Pro Tanto* Distinction and Policy Considerations

Because the Court has found that neither the settlement agreement nor Judge Doumar's prior order answer the question of whether the *pro rata* or *pro tanto* methods should be applied, it appears that this Court must decide which option is preferable from a legal standpoint. As noted previously, one commentator states that the *pro rata* rule governs the question of credit for a non-settling tortfeasor. *See* Schoenbaum, *supra,* at Section 4–7. *See also* 2 Benedict on Admiralty, §§ 3–9 (7th ed. 1993) (discussing various methods of set-off).

However, the rules regarding the effect of a tortfeasor's settlement with a personal injury plaintiff were revisited recently in the admiralty context in *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller,* 957 F.2d 1575 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992). The court therein stated that the general rule is that non-settling joint tortfeasors are entitled to have a judgment against them reduced by the amount of any settlement. Otherwise, the injured party would receive a double recovery.

However, the Eleventh Circuit noted a split of authority over *how* to calculate the settlement credit. The Court observed that some courts use the *pro rata* approach under which the non-settling joint tortfeasor receives a credit based upon the percentage of the settling party's fault. Other courts apply the *pro tanto* approach and give a credit for the actual dollar amount of the settlement. *See id.* at 1578–80.

It seems clear that for a significant period of time courts applied the *pro tanto* approach. In light of several Supreme Court decisions which changed the admiralty rule of contribution, *see Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) (establishing

modern right to contribution among maritime tortfeasors); *United States v. Reliable Transfer*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (adopting comparative negligence approach), courts adopted the *pro rata* approach, which credits the non-settling tortfeasor based on the percentage of fault of the settling joint tortfeasor. *See* Schoenbaum, *supra; Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246 (5th Cir.1979) (adopting *pro rata* approach in lieu of *pro tanto* approach). Courts adopting the *pro rata* rule apparently felt it appropriate in light of the principles of comparative fault, applied in the admiralty context by these Supreme Court decisions.

In *Great Lakes*, however, the Eleventh Circuit noted the apparent reversal of the Fifth Circuit and its own jurisdiction in once again utilizing the *pro tanto* approach, and the *Great Lakes* court affirmed that the *pro tanto* approach was currently the law of the Eleventh Circuit. *Great Lakes*, 957 F.2d at 1580; *see also Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1548 (11th Cir. 1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). Therefore, at this time the Court is of the view that there is no clear answer as to which rule is appropriate.

The United States Supreme Court may ultimately decide which approach is proper. The Court has granted *certiorari* in two admiralty cases concerning contribution and settlement issues. In *McDermott, Inc. v. Clyde Iron*, 979 F.2d 1068 (5th Cir.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993), the Court granted *certiorari* on the following question: Should the plaintiff in a maritime case who settled with three of five defendants be penalized and defendants who forced matter to trial be rewarded by court of appeals' deduction of both full dollar amount of settlement and settling defendants' proportionate share of liability from plaintiff's judgment? It appears to this Court that, as a part of its decision, the Supreme Court may decide the propriety of the *pro rata* versus the *pro tanto* methods.

In addition, in *Boca Grande Club, Inc. v. Florida Power & Light Co.*, 990 F.2d 606 (11th Cir.1993), *cert. granted*, —— U.S. ——, 114 S.Ct. 39, 125 L.Ed.2d 788 (1993), the Court granted *certiorari* on the question of whether the Court should enforce the maritime rule that settlement between a joint tortfeasor and a plaintiff bars all claims for contribution by non-settling tortfeasors against a settling tortfeasor, commonly known as the settlement bar rule. This case does not appear directly on point, as the Steel defendants do not now request contribution from Bergesen, but rather a credit for the amounts paid to Boykin by Bergesen. However, the settlement bar rule is related in that courts have found that the method of credit and the settlement bar rule must ultimately be considered together in order for the rules to make sense from a policy standpoint. *See, e.g., Great Lakes*, 957 F.2d at 1581–84.

In the context of the *Boykin* case, the rules would be applied as follows. Under the *pro rata* approach, the nonsettling tortfeasor, the Steel Defendants, would be credited based on the proportionate fault of the settling tortfeasor, Bergesen. The Court found that Bergesen was not at fault at all, and therefore the Steel defendants would receive no credit. Therefore, in this case, application of the *pro rata* approach would have the anomalous effect of providing double recovery to Boykin, because the Steel Defendants would not be credited at all for the payments made by Bergesen to Boykin.

The Steel defendants argue that under either method the plaintiff simply cannot be permitted double recovery. This argument is somewhat persuasive. However, a review of the application of these rules, and an analysis of the economic impact of the rules, indicates that the Steel defendants' contention is incorrect.

In *Great Lakes Dredge & Dock*, 957 F.2d at 1579–80, the Court described the application of the *pro rata* rule in cases such as *Leger*. The Court stated:

It should be noted that the settling joint tortfeasor in *Leger* actually paid about $25,000 more than what its proportionate share of the damages would have been had it gone to trial. As a result, the plaintiff's compensation under the *pro rata* approach

exceeded his actual damages as determined by the jury. The court rejected the non-settling defendant's argument, that, by not using the *pro tanto* approach, the plaintiff was receiving a double recovery. The court held that the plaintiff merely made a favorable settlement and only recovered once for each tortfeasor's percentage of fault. It noted that both the plaintiff and the settling defendant chose to accept a fixed sum rather than to risk the uncertainty of a jury trial (citation omitted).

It is correct that the *Leger* court stated that it did not literally permit a double recovery. *See Leger*, 592 F.2d at 1250. The Court conceded, however, that the plaintiff received more money than the amount in which the jury found him to have been injured. *Id.* The Court stated, "... we do not consider this a double recovery. Leger merely obtained a favorable settlement. By releasing ... [the settling defendants] in exchange for $182,331.05, ... [the plaintiff] 'sold' or relinquished any claims which he had against them. ... [a]t the time of the settlement negotiations, no one knew how a jury would apportion fault or in what amount it would find damages." *Id.*

■ Under the *pro rata* approach, therefore, when the plaintiff has concluded a generous settlement with a tortfeasor later found not to be at fault, the plaintiff's compensation can exceed the actual damages as determined by the fact-finder. The *pro rata* approach deems such a situation as merely a fortuitous result from a favorable settlement by the plaintiff, and one in which the plaintiff benefitted by choosing a fixed sum rather than risking the uncertainty of a trial. Therefore, although there is language in cases such as *Leger* to suggest that double recovery is not permitted, even under the *pro rata* approach, such cases are properly understood as actually permitting such recovery but characterizing the settlement payments as the price for the release of claims, and not as recovery for the underlying injury to the plaintiff.

Neither Boykin nor the Steel defendants have offered any case law from the Fourth Circuit which suggests that either the *pro rata* or *pro tanto* rule is favored in this jurisdiction. Neither party indicated that it wished for the Court to refrain from ruling on the issue until the Supreme Court decides either of the cases on which it has granted *certiorari*.

■ From a policy standpoint, it may be useful to consider that this case presents something of a rarity. In general, when an alleged tortfeasor has settled, it is because it has potential liability to the plaintiff. Settling tortfeasors are precluded from seeking contribution from non-settling tortfeasors when the settling tortfeasor was not at fault, with the exception that a tortfeasor who is potentially, but not ultimately liable, may obtain indemnity or contribution when it has offered the non-settling tortfeasor the choice of approving the settlement or of taking over the defense of the case and agreeing to hold the indemnitee harmless. *M & O Marine, Inc. v. Marquette Co.*, 730 F.2d 133, 135–36 (3rd Cir.1984).

■ Therefore, this case represents the unusual case where a potential tortfeasor (Bergesen) settles with the plaintiff but is ultimately found not to be at fault at all. In this situation, the *pro rata* rule results in what is effectively double recovery for the plaintiff, because the settling tortfeasor has paid the plaintiff more than that for which it was eventually liable. Courts favoring this approach have noted that the approach is not unfair because the settling parties have chosen to settle on a fixed sum rather than risk the uncertainty of trial, and a non-settling tortfeasor has chosen the risk of trial. Double recovery is simply one possible result, but if the settling party is found to be at greatest fault, and the fact-finder finds considerable damages, then the plaintiff may recover less than he would have had he not settled, and the non-settling tortfeasor may benefit. Therefore, the unfairness protested by the Steel defendants always results from looking at the application of the rules after the fact, *ex post*, rather than from the standpoint of how the parties are situated prior to trial, *ex ante*.

Therefore, the Court is of the view that the *pro rata* rule is the appropriate method of

set-off in this case. Because the Steel Defendants are one-hundred percent at fault and Bergesen is zero percent at fault, this results in no allowance of credit for the Steel Defendants. Accordingly, the Steel defendants motion to amend the judgment is DENIED.[4]

It is so ORDERED.

4. Because the Court has denied the motion to amend, the Court does not need to decide the alternative contention of Boykin that part of the disputed sums represent a collateral source for which no credit is allowed in any event.