**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VOLPE M. BOYKIN, Administrator of
the Estate of Denzil J. Pereira,
Plaintiff,

v.

CHINA STEEL CORPORATION; UNITED
STATES STEEL MINING COMPANY,
INCORPORATED,
Defendants-Appellants,

No. 94-1267

BERGESEN D.Y. A/S,
Defendant-Appellee,

and

WESCOL SHIPPING, INCORPORATED, t/a
Lavino Shipping Agencies,
Incorporated,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., Robert G. Doumar, District Judges;
Tomme E. Miller, Magistrate Judge.
(CA-92-391-N)

Argued: November 4, 1994

Decided: January 17, 1996

Before WIDENER and HALL, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in which Judge Hall and Senior Judge Chapman joined.

_____

**COUNSEL**

**ARGUED:** Timothy B. Dyk, JONES, DAY, REAVIS & POGUE, Washington, D.C., for Appellants. D. Arthur Kelsey, HUNTON & WILLIAMS, Norfolk, Virginia, for Appellee. **ON BRIEF:** Gregory G. Katsas, JONES, DAY, REAVIS & POGUE, Washington, D.C.; Edward C. Schmidt, Richard P. Bress, Pittsburgh, Pennsylvania; Morton H. Clark, Carter T. Gunn, VANDEVENTER, BLACK, MEREDITH & MARTIN, Norfolk, Virginia; William R. Hawkins, J. F. Wilson, U.S. STEEL GROUP, Pittsburgh, Pennsylvania, for Appellants. John E. Holoway, HUNTON & WILLIAMS, Norfolk, Virginia, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Appellants China Steel Corporation and U.S. Steel Mining Company (defendants) appeal from a judgment against them in a maritime action brought under the Death on the High Seas Act, 46 U.S.C. App. §§ 761-768, on behalf of Denzil Pereira, the captain, and four crew members, killed on October 27, 1990 by an explosion on board the M/V Berge Charlotte. Although this appeal initially raised numerous issues, an interim settlement of the dispute between the defendants and Pereira's estate leaves open only the issue of a $540,000 indemnity award granted to Bergesen D.Y. A/S, the owner of the ship and a defendant in the underlying action, for payments it made to the survivors of the five decedents under a pretrial settlement agreement. We affirm the judgment of the district court requiring defendants to indemnify Bergesen for amounts paid under the settlement agreement.

The facts of this case are no longer in dispute and appear in two published opinions of the district court in 835 F. Supp. 274 (E.D. Va. 1993) and 842 F. Supp. 874 (E.D. Va. 1994). The M/V Berge

2

Charlotte, owned by Bergesen and chartered by China Steel, was carrying a load of coal, supplied by U.S. Steel and purchased by China Steel, from Norfolk to Taiwan. See Boykin v. Bergesen D.Y. A/S, 835 F. Supp. 274, 276, 281 (E.D. Va. 1993). U.S. Steel represented that the coal was category A, see Boykin, 835 F. Supp. at 279, which is the most common type of coal and is not considered such a dangerous cargo because it emits its methane gas more quickly, resulting in the emission of the gas before loading in the hold and reducing the likelihood of explosion. See Boykin, 835 F. Supp. at 279. In fact, U.S. Steel knew or had reason to know that the coal on board the ship was category B coal. See Boykin, 835 F. Supp. at 280. Category B coal emits its methane gas more slowly, retaining more methane for release in the hold, and the resulting methane accumulation is highly volatile unless subject to frequent or continuous ventilation. See, e.g., Boykin, 835 F. Supp. at 281. Because of bad weather, see Boykin, 835 F. Supp. at 281-82, and because category A coal does not require such ventilation, see Boykin, 835 F. Supp. at 281, the ship did not so ventilate the load. See Boykin, 835 F. Supp. at 281. This resulted in a methane explosion which killed Pereira and the four crewmen. See Boykin, 835 F. Supp. at 276.

Boykin, as administrator of the estate of Pereira, sued Bergesen, U.S. Steel, China Steel, and another in a Virginia state court, and the case was removed to the federal district court. Bergesen and the defendants cross-claimed for indemnity and contribution, and Bergesen further sought recovery from the defendants for damage to the ship. Boykin, 835 F. Supp. at 275. Bergesen then settled with Boykin and with the other decedents, leaving only Boykin's claims against China Steel and U. S. Steel and the cross-claims between Bergesen and those defendants. The district court awarded judgment to Boykin[1]

_____

[1] The district court entered judgment against China Steel and U.S. Steel in favor of Boykin for approximately $774,000. See Boykin, 835 F. Supp. at 287. This award was not reduced to reflect Bergesen's settlement with Boykin. Although the defendants moved the district court to credit the judgment by amounts paid by Bergesen under the settlement, it denied the motion and adopted a proportionate-share rule that has since been announced by the Supreme Court in McDermott. See Boykin, 842 F. Supp. at 882-83.

Thus, because the district court also awarded indemnity to Bergesen for amounts paid by Bergesen under the settlement, China Steel and U.S. Steel were required to pay in toto more than the total damages found for each individual decedent.

3

and to Bergesen, finding that "the Steel defendants were one hundred percent at fault and . . . Bergesen was zero percent at fault." Boykin v. Bergesen D.Y. A/S, 842 F. Supp. 874, 879, 883 (E.D. Va. 1994). The district court also ordered China Steel and U.S. Steel to indemnify Bergesen for $540,000, the amount paid by Bergesen to the decedents under the settlement. Boykin, 835 F. Supp. at 287. It is this indemnity award which the defendants challenge on appeal and which is the only issue remaining in the case. The district court based its decision requiring that Bergesen be paid indemnity by China Steel and U. S. Steel on two alternate bases, first, on the basis of contractual indemnity under the charter party, and second, under the admiralty law of indemnity in this circuit as set out in Vaughn v. Farrell Lines, Inc., 937 F.2d 953 (4th Cir. 1991).

It set out that "Bergesen's claim for indemnity against [U. S. Steel] is based on tort principles, [referring to indemnity implied in law] while its claim against China Steel is based on the charter party" and that U. S. Steel "agreed to take over China Steel's defense and hold China Steel harmless for any damages." Boykin , 835 F. Supp. 287 n.19. It had previously stated that "Bergesen's claim for indemnity rests on the terms of a charter party, and the question of whether, under that agreement, China Steel provided sufficient notice to Bergesen of the hazardous characteristics of the cargo." Boykin, 835 F. Supp. at 278 n.4. The court then provided, "In addition, with regard to indemnity under the charter party, the Court has previously found that China Steel breached the terms of the charter party by failing to provide adequate notice of the hazardous nature of the cargo." Boykin, 835 F. Supp. at 287 (footnote omitted).

With respect to indemnity under Vaughn, the court stated that "The indemnitor-indemnitee relationship is established because the Court has found that the Steel Defendants were guilty of active or primary wrongdoing, and that Bergesen has not been proven negligent. The Court has further found that the Steel Defendants' negligence proximately caused the harm for which Bergesen paid in settlement, and FINDS that Bergesen's payments were reasonable. Further, Bergesen tendered its defense to U. S. Steel. (Berg Ex. 72)." Boykin, 835 F. Supp. at 287 (citations omitted).

We will first consider indemnification under the charter party. Rider clause 42 of the charter party provides that that agreement

4

"shall be governed by English Law." An affidavit of an English attorney explained that under English law a charterer, China Steel here, impliedly warrants that his cargo is fit for ordinary carriage and does not present any hazardous characteristics which are of a wholly different kind from what ought reasonably to be anticipated. As stated above, the district court found as a fact that China Steel failed to provide adequate notice of the hazardous nature of the cargo. The affidavit mentioned further provides that for breach of such a warranty, the charterer is liable by way of an indemnity for damages to the ship owner for all property damages, personal injury, debt settlements, and loss of hire. Therefore, the liability of China Steel in indemnity is based on the indemnity provided in the written charter party and does not independently depend for its existence on the indemnity in admiralty law provided in Vaughn.

China Steel and U. S. Steel argue that McDermott, Inc. v. AmClyde & River Don Castings, Ltd., 62 U.S.L.W. 4241 (U.S. Apr. 20, 1994), has done away with all notions of indemnity in favor of a settling defendant against a non-settling defendant in admiralty. The short answer to that contention is that any changes McDermott may have made to the law of indemnity in admiralty we do not think affect an indemnity obligation such as that which was imposed upon China Steel by virtue of a written agreement. That reason alone would serve to sustain the judgment of the district court in favor of Bergesen.

In connection with indemnity under the charter party, no question as to the district court's treatment of that aspect of the case was raised on appeal until the reply brief of China Steel and U. S. Steel. Bergesen claims, probably properly, that contentions made by the steel defendants in the reply brief with respect to English law have been waived. We do not base our decision on waiver, however, for we are of opinion that the district court correctly treated China Steel's liability under the charter party as the breach of warranty which it was, and we are further of opinion that the district court's findings of fact upon which that decision was based are not clearly erroneous. Indeed, there is not even a claim that the factfinding just referred to is clearly erroneous.

The last thing we consider is the liability of the steel defendants under Vaughn. With respect to that question, it is quite important that

5

Vaughn's requirements be considered and, as well, the factual setting of the instant case. Vaughn was a case in which an injured seaman had sued the vessel owner and Foster Wheeler, the manufacturer of a boiler, on account of cancer caused by the use of asbestos in the boiler. The district court found that the use of asbestos in the boiler by Foster Wheeler had made the vessel unseaworthy and that the ship owner was guilty of no wrongdoing. The plaintiff's personal representative had settled with the shipowner prior to trial but had not settled with Foster Wheeler. The district court found that Foster Wheeler was an active wrongdoer in supplying a defective boiler to the shipowner, that the defective boiler made the ship unseaworthy, and that the ship owner had not been guilty of any negligence which contributed to the loss. We found that indemnity was called for, stating that it ". . . typically arises when the indemnitee has been found absolutely liable for the wrongful act of another as in an `admiralty context where a shipowner held liable on an unseaworthiness claim is awarded indemnity against a third party whose negligence caused the unsafe condition resulting in injury to a seaman.'" Vaughn, 937 F.2d at 957.

The case at hand is on facts which are indistinguishable from those in Vaughn. The negligence of the steel defendants caused the accumulation of methane gas in the hold of the ship involved, the explosion of which caused the death of the captain and four members of the crew. It is idle to argue that the Berge Charlotte was in a seaworthy condition when her hold was laden with the methane exuding coal unventilated due to the sole fault of the steel defendants. To say that the ship had to defend, instead of settle, in such an action at the risk of forfeiting any indemnity claim against the wrongdoers, is to require the ship to take a position as unrealistic as it is unreasonable, we think.

The establishment of indemnity under Vaughn has four requirements: first, an indemnitor-indemnitee relationship must exist; second, the indemnitee must demonstrate that it was under some compulsion to satisfy the original claim of the plaintiff; third, the indemnitee must prove that its settlement with the plaintiff in the underlying action was reasonable; and fourth, the indemnitee must show that the unlawful act of the indemnitor proximately caused the injury to the original plaintiff. An additional requirement is that the proposed indemnitor be notified of the underlying claim and tendered the

6

defense of the claim. The steel defendants do not contest that each of the requirements of <u>Vaughn</u> has been satisfied. And not of the least consequence is the fact that the district court found as a fact that "[f]urther, Bergesen tendered its defense to U. S. Steel (Berg Ex. 72)." <u>Boykin</u>, 835 F. Supp. at 287.**2** So unless <u>McDermott</u> has overruled <u>Vaughn</u> by implication, the district court's order should also be affirmed on the alternate ground that indemnity was required under <u>Vaughn</u>.

The facts of <u>McDermott</u> are to the effect that a crane purchased by McDermott from AmClyde (apparently the manufacturer) caused considerable damage to the crane itself and to deck of the oil and gas rig in the Gulf of Mexico on which the crane was working. The casualty was occasioned by the failure of a hook supplied by River Don Castings or by a sling supplied by one of three other defendants. McDermott settled with the sling defendants for any of their liability for both crane and rig damages. McDermott agreed to indemnify the sling defendants against any contribution action. Upon a trial, the jury found that the total damages to the rig**3** amounted to $2.1 million and allocated responsibility, 32% to Amclyde, 38% to River Don, and 30% to McDermott and the sling defendants. The question before the court was the allocation of damages on those facts.

The Court adopted option 3 from the comment on the caveat to <u>Restatement (Second) of Torts</u> § 886A (1977) which is "(3) The money paid extinguishes any claim that the injured party has against the released tort-feasor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor." 62 U.S.L.W. at 4243.

The Court proceeded to state that under this approach no suits for contribution from the settling defendants are permitted, nor are they necessary, because the non-settling defendants pay no more than their share of the judgment. The steel defendants now argue that indemnity

_____

**2** The exhibit showing the tender of the defense is not even included in the record on appeal.

**3** Crane damage was not included in the jury verdict.

is equated to contribution and take the position that indemnity, as under Vaughn, has been abolished by McDermott.

We do not agree, for several reasons. First, Bergesen and the steel defendants are not joint tort-feasors. Even in the face of a claim that they might have been, Bergesen has been found not a tort-feasor as a matter of fact and not guilty of any fault, which holding has not been questioned.**4** In the case of Westinghouse Credit Corp. v. M/V NEW ORLEANS, 39 F.3d 353 (5th Cir. 1994), the proportionate share rule of McDermott was held not to apply in favor of non-settling defendants unless they were joint tort-feasors with the settling defendants. Under that reasoning, the proportionate share rule would have no application here.

While at first blush it may seem inequitable for the steel defendants not to have received any credit against the judgment against them for the amount of the settlement paid by Bergesen, and also being required to indemnify Bergesen, that does not state the whole case. The liability to which the undoubted negligence of the steel defendants exposed Bergesen was not merely that of a joint tort-feasor, it was the liability without fault attaching to an unseaworthy ship. In a very similar case to the one at hand, it has been held in admiralty that when the negligence of two tort-feasors occasioned the liability without fault of payments of maintenance and cure, the employer was entitled to recovery of the entire maintenance and cure payments from the tort-feasors, although the employee was partially at fault and had settled with the employer as well as with the tort-feasors. In the case of Bergtram v. Freeport McMoran, Inc., 35 F.3d 1008 (5th Cir. 1994), an employee of Energy was injured while on the job on a drilling rig in the Gulf of Mexico. The employee settled with all concerned, and upon a trial, fault was allocated 60% to the employee, 20% to a contractor on the job, and 20% to the platform owner. The court held that Energy, the employer, was not a joint tort-feasor with the contractor and the platform owner and that its liability for maintenance and cure was regardless of whether or not it was negligent. Because the negligence of Houma and Freeport, the tort-feasors, had

_____

**4** Bergesen is also not a joint tortfeasor because its liability for an unseaworthy vessel is liability without fault, a different legal duty than that which applies to the steel defendants.

8

partially caused the injury to the employee which had occasioned the payment of maintenance and cure, the employer, who was free from fault, was entitled to be reimbursed completely 50% by each of the equally at fault tort-feasors, although their liability was found to be only 20% each. The court held that the proportional fault rule of McDermott did not prevent this reimbursement in a fact situation little different from the one present here.

Of equal consequence in our reasoning is a discussion by the Supreme Court in McDermott of the various values to be considered in the allocation of loss in situations in which one defendant has settled and another or others has not. Not least among them is the risk involved and the practical situation in which each of the defendants finds itself. In the case at hand in a defense of the claim by the decedents' estates, Bergesen would have had to show that the vessel was seaworthy when its hold was laden with methane exuding coal which was not being properly ventilated. That condition, from any point of view disclosed by this record, made Bergesen's chances of success about as near zero as any case we have seen. In that situation, Bergesen was able to settle on account of the five deaths caused by the explosion. Had it not attempted to settle, its judgment would certainly have been questioned. Prior to settlement, however, Bergesen offered the defense of the case to the steel defendants whose negligence had caused the dangerous situation. When the steel defendants refused the defense of the case, they assumed the risk of the defense. And a part of that risk was reimbursing by way of indemnity Bergesen for its payment for the deaths caused by a vessel which was undoubtedly unseaworthy. We do not think that the argument of the steel defendants, that Bergesen took a poor risk in settling the case, is valid. The poor risk was taken by the steel defendants when they were tendered the defense and declined it.

We are thus of opinion that the district court should be affirmed on either alternate ground upon which it found indemnity in favor of Bergesen.

9

The judgment of the district court is

AFFIRMED.**5**

_____

**5** The steel defendants, in their opening brief, p.30, have foregone any claim for a reduction in the plaintiff's judgment on account of the settlement by Bergesen. Cf. McDermott, 62 U.S.L.W. at 4243. That position necessarily forfeits any claim under what the Court has called the "one satisfaction rule" and has been mentioned in McDermott at p.4246, where the Court stated in that case it would not apply the rule even if that resulted in an over-compensation of McDermott. This circuit, in a studied opinion, adopted the rule from a tentative draft of the Restatement (Second) of Torts § 885(3), in McKethon v. Burris, et al., 545 F.2d 1388 (4th Cir. 1976). The rule appears in the Restatement (Second) (1977) as § 885(3) with little change. The fact that the steel defendants here elected not to claim on account of that theory should not be taken as any indication that we think the theory is no longer extant in this circuit or might not have been applied in this case. We express no opinion on either such question.

The motion of U.S. Steel to strike Bergesen's reply brief is denied.

10