**T.N.T. MARINE SERVICE, INC., Plaintiff-Appellant,**

v.

**WEAVER SHIPYARDS & DRY DOCKS, INC., in personam, and against the TUG OCEAN WIND, her engines, tackle, etc., in rem., Defendant-Appellee.**

No. 82–2221
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 11, 1983.

Clann & Pearson, Michael K. Clann, Houston, Tex., for plaintiff-appellant.

Benckenstein, McNicholas, Oxford, Radford, Johnson & Nathan, Hubert Oxford, III, Beaumont, Tex., Fulbright & Jaworski, R. Scott Hogarty, Houston, Tex., for Weaver Shipyards & Dry Docks, Inc.

Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.

PER CURIAM:

The M/V CAPE SAN JUAN, owned by plaintiff-appellant T.N.T. Marine Service, Inc., sank on or about April 28, 1977 while awaiting repairs and dry docking at the facilities of defendant-appellee Weaver Shipyard and Drydock, Inc. The sinking was the result of electrolysis which caused two small holes in the vessel's bottom.

Trial was held before the district judge, who found that there was insufficient evidence to establish that the defendant was a bailee of the vessel, was negligent, or was a cause in fact or a proximate cause of the electrolysis. On appeal, the plaintiff argues that the district court erred in denying its request for a jury trial, and that the finding that no bailment existed was clearly erroneous. We affirm.

## I.

Appellant asserts a right to a jury because diversity jurisdiction under 28 U.S.C. § 1332, as well as admiralty jurisdiction under 28 U.S.C. § 1333, exists in this case. While never denying that diversity exists, appellee maintains that the suit was properly characterized as one in admiralty for purposes of deciding the right to a trial by jury.

Numerous and important consequences flow from whether a district court treats a case as falling under admiralty or diversity jurisdiction. The Federal Rules of Civil Procedure give special treatment to admiralty claims, as do the Supplemental Rules for Certain Admiralty and Maritime

Claims. *See* Fed.R.Civ.P. 9(h), 14(c), 38(e), 82; 5 Wright & Miller, Federal Practice and Procedure: Civil § 1313 at 453 (1969). Special rules as to venue and interlocutory appeal apply to admiralty suits. Fed.R.Civ.P. 9 advisory committee note (1966 amendment). The availability of certain maritime remedies, such as maritime attachment and garnishment, actions in rem, possessory, petitory and partition actions and limitation of liability, depends on the source of jurisdiction as well. *Id.* Of particular note in this case is that an action against the vessel in rem would fall within the exclusive admiralty jurisdiction and could not be brought under diversity jurisdiction. *Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1065 n. 3 (5th Cir.), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981). Other aspects of substantive law would vary as well, since state law applies to diversity suits under the *Erie* doctrine, while federal common law governs admiralty suits. To give one important example, admiralty suits routinely allow recovery of prejudgment interest, a rule that may or may not apply under applicable state law. *Dow Chemical Co. v. M/V GULF SEAS,* 593 F.2d 613, 614 (5th Cir.1979). Finally, the Seventh Amendment right to trial by jury in suits at "common law" applies to diversity suits but not to admiralty suits. Fed.R. Civ.P. 38(a), (e).

■ A plaintiff who has a state common law cause of action that also falls within the federal admiralty jurisdiction may elect to bring the suit either as an admiralty action in federal court, or as a state common law action in state court or in federal court (assuming he meets the diversity jurisdiction requirements for federal court). 28 U.S.C. § 1333(1); *Powell, supra,* at 1066. In this case, the complaint asserted both admiralty and diversity jurisdiction. The issue on appeal is how to characterize the suit for purposes of deciding whether the plaintiff has a right to trial by jury.

Fed.R.Civ.P. 9(h) directly addresses this question and states, in pertinent part:

A pleading or count setting forth a claim for relief within the admiralty and mari-

time jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not.

■ The Rule makes two points relevant here. The first sentence indicates that a suit falling under admiralty as well as diversity jurisdiction will be treated as an admiralty case for purposes of the right to a jury trial (Rule 38(e)) if the pleading contains an "identifying statement" asserting an admiralty or maritime claim. The plaintiff may elect to have a suit treated as either a diversity or admiralty suit, each option having advantages and disadvantages, but the plaintiff's case will be treated as one in admiralty "by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim." Fed.R.Civ.P. 9 advisory committee note (1966 amendment). Therefore, there is no right to a jury trial where the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though diversity jurisdiction exists as well. *Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249 (5th Cir.1975).

The second sentence of Rule 9(h) makes clear that Rule 38(e) denies a right to trial by jury on any claim that is cognizable only in admiralty, regardless of what the pleading says. "Some claims for relief can only be suits in admiralty, either because the admiralty jurisdiction is exclusive or because no nonmaritime ground of federal jurisdiction exists." Fed.R.Civ.P. 9 advisory committee note (1966 amendment).

Applying these rules, we hold that the plaintiff elected to bring the suit in admiralty. Although the complaint alleged diversity jurisdiction, it went on to state: "This is also a suit for breach of a maritime contract and for maritime tort." While the preferable technique might be to expressly

invoke Rule 9(h) (*see* Wright & Miller, *supra,* at 454; Fed.R.Civ.P. Forms 2(d), 15), this quoted language from the complaint is a simple statement asserting admiralty or maritime claims under the first sentence of Rule 9(h), as is the opening line of the complaint: "The Complaint of T.N.T. Marine Service, Inc. . . . against Weaver Shipyards & Dry Docks, Inc. . . . for breach of contract, civil and maritime, and for maritime tort avers on information and belief as follows . . . ."

■ Furthermore, the complaint is styled as one against "WEAVER SHIPYARDS & DRY DOCKS, INC. *in personam* and against the Tug OCEAN WIND, her engines, tackle, apparel, etc. *in rem.*" As explained above, an action against a vessel in rem falls within the exclusive admiralty jurisdiction. Thus, under the second sentence of Rule 9(h), there would be no right to trial by jury as to any in rem claims brought against the vessel.

In short, the plaintiff elected to bring the suit under admiralty jurisdiction, and cannot now complain about his right to a jury. Rule 9(h) is not a harsh rule, for its third sentence expressly provides that the liberal procedures for amending complaints found in Rule 15 apply to identifying statements. In this instance, the plaintiff chose not to amend its complaint, and it is not entitled to a second trial.

## II.

■ Appellant's second argument is that the district court erred in finding that no bailment relationship existed. This finding was one of fact and will not be overturned unless clearly erroneous. Fed.R.Civ.P. 52(a); *Movible Offshore, Inc. v. M/V WILKEN A. FALGOUT,* 471 F.2d 268, 271 (5th Cir.1973).

■ A bailment has been defined as:

A delivery of goods or personal property, by one person to another, in trust for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both, and *upon a contract,* express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of the same in conformity with the purpose of the trust.

Black's Law Dictionary 129 (5th ed. 1979) (emphasis added). *See also* 8 C.J.S. *Bailments* § 1 (1962) (bailment "comprehensively defined as meaning a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, expressed or implied . . . .") In this case we find no written document in the record that can be said to constitute a contract between the litigants for a bailment during the time of the vessel's sinking. To the extent that appellant is asserting that an oral or implied contract existed, his claims necessarily hinge on the testimony presented at trial, most or all of it interested, and the trial court made credibility determinations that we do not feel compelled to question or overturn.

■ It has been stated that an admiralty bailment does not arise unless the delivery to the bailee is complete and he has exclusive right to possession of the bailed property, even as against the owner. *Continental Insurance Co. v. Washeon Corp.,* 524 F.Supp. 34, 37 (E.D.Mo.1981). A bailee's duties are limited when the owner or his agent or employee remains with the vessel or has access to it. *Id.; Stegemann v. Miami Beach Boat Slips,* 213 F.2d 561, 565 (5th Cir.1954). In this case the testimony indicated that the president of T.N.T. Marine Service, Inc. and an employee had access to the M/V CAPE SAN JUAN while it was moored at the defendant's facility. The record of the trial as a whole does not lead us to conclude that the trial court's finding on the bailment issue was clearly erroneous.

AFFIRMED.