Philip A. CHISHOLM, Plaintiff,

v.

UHP PROJECTS, INC., Defendant.

No. Civ.A 2:96CV578.

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 22, 1998.

David Harlen Sump, Crenshaw, Ware & Martin, Norfolk, VA, Michael B. Latti, Latti Associates, Boston, MA, David J. Berg, Latti Associates LLP, Boston, MA, for Phillip A. Chisholm, plaintiff.

Temple W. Cabell, Schaffer & Cabell, Richmond, VA, Richard White Schaffer, Schaffer & Cabell, Richmond, VA, for UHP Projects, Inc., defendant.

Temple W. Cabell, Schaffer & Cabell, Richmond, VA, Richard White Schaffer, Schaffer & Cabell, Richmond, VA, for UHP Projects, Inc., third-party plaintiff.

Frank Bell Miller, III, Sands, Anderson, Marks & Miller, Richmond, VA, for Wilco Supply, Inc., third-party defendant.

James Richard Harvey, III, Frank Nash Bilisoly, IV, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for Spir Star Druckschlauche GMBH, third-party defendant.

## ORDER and OPINION

DOUMAR, District Judge.

This case involves the question of what is or is not admiralty jurisdiction in connection with the right to a trial by jury. It also concerns the question as to whether a plaintiff is entitled to a double recovery. The plaintiff seaman suffered a head injury while aboard a vessel in port in Chesapeake, Virginia. The plaintiff filed an action in diversity in this Court alleging that the defendant was negligent in performing services on board the vessel, and also claiming a breach of an implied warranty of workmanlike performance in the discharge of those services. The plaintiff claimed that the count for negligence was under Virginia law. By such pleading, the plaintiff demanded a jury trial. There was no evidence of negligence. In relation to the "implied warranty" count, the plaintiff wanted to apply admiralty law. In Virginia, contractual "privity" is necessary to sustain a cause of action, unless the case involves negligence or economic damage to property, or involves a manufacturer or seller of goods. *See* Va.Code Ann. § 8.01–223; Va.Code Ann. § 8.2–318. In this case, the plaintiff has no evidence of negligence, and summary judgment was sustained on that count. Furthermore, the defendant was a seller of services, not a seller of goods. Therefore, the plaintiff's action for implied contractual warranty does not lie under Virginia law. *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55 (1988). The count of warranty of workmanlike performance was therefore urged as an admiralty claim, which is not dependent upon privity. The plaintiff is not

entitled to a jury trial on this question of pure admiralty law.

At trial in this matter, the Court, ever mindful of the status of seamen, utilized the jury as an advisory jury on the sole, remaining question of breach of implied warranty of workmanlike performance, as well as the extent, nature and amount of damages. The Court accepts the jury verdict as a recommended verdict. The advisory jury found that the defendant violated its breach of workmanlike performance in admiralty and assessed the plaintiff's total injuries and damages to be $90,000.00. As the evidence showed that there was no debilitating injury and no functional disability suffered by the plaintiff, the Court finds that the recommended verdict was a fair and reasonable verdict and adopts it as its own. It independently adopts the same valuation that the jury did, as well as the determination that the defendant breached its implied warranty of workmanlike service in admiralty. The Court reiterates that the defendant did not violate any duty under Virginia law nor any breach of any implied warranty under the law of Virginia.

The plaintiff has already recovered $29,025.93 in maintenance and cure from the ship as well as $200,000.00 in settlement of the unseaworthiness claim against the ship based on the same injuries sustained on account of the inadequacy of the same equipment. The ship in turn claimed a breach of implied warranty of workmanlike service against the defendant. The defendant settled its suit with the ship by paying the full sum paid by the ship to the plaintiff; that is, the $229,025.93 in settlement of the ship's claim for breach of implied warranty of workmanlike service in admiralty. The plaintiff believes he is entitled to the sum of $90,000.00 representing the advisory jury's verdict, even though he has been unjustly enriched already by $110,000.00 without taking into account maintenance and cure. In other words, the plaintiff demands a triple recovery, or $290,000.00 (200,000 + 90,000), for the injuries he has sustained.

The defendant claimed an "offset" to the extent of $200,000.00 that it paid in indemnity to the ship in satisfaction of its warranty of workmanlike performance. Accordingly, the Court finds that the defendant is entitled to an offset against the $90,000.00 award to the extent of its $200,000.00 settlement. Since the plaintiff has been fully, fairly and adequately overcompensated for the full amount of his injuries, and since the offset exceeds the damages, the plaintiff is not entitled to a verdict and the Court **ENTERS JUDGMENT** for the defendant.

### I. Background

UHP Projects, Inc. ("UHP") is in the business of cleaning tanks and holds of ocean faring vessels. The company uses ultra high pressure water jets to perform these cleaning services. The ship owner, Sealift, Inc. ("Sealift"), contracted with UHP to remove rust and scale from the ballast tanks of the S.S. ULTRAMAX. On July 1, 1994, the ULTRAMAX was docked at Cargill South Terminal in Chesapeake, Virginia. UHP went aboard the ULTRAMAX to clean the ballast tanks with its high pressure water jets.

On that particular day the plaintiff, Philip A. Chisholm ("Chisholm"), was aboard the ULTRAMAX as a first assistant engineer. His employer, Sealift, did not own the ultra high pressure blasting pump and hoses used on the ballast tanks. UHP owned and operated the cleaning equipment, and UHP was responsible for their proper operation on the day in question. Early that morning, UHP employees were preparing to begin ultra high pressure water jetting in one of the ballast tanks of the ULTRAMAX. Patrick Courville, a UHP manager who was supervising the project, noticed a leak in a connector between the two end fittings of the ultra high pressure hoses. Mr. Courville readjusted the connector to stop the leak. Mr. Courville then directed a UHP employee to turn the pump to idle and then to full power. The UHP employee carried out Mr. Courville's request. Yet when the employee adjusted the pump to full power, either a hose or an end fitting, or both, failed. As a consequence, the left side of the upstream hose blew apart from the end fitting.

At the time, Chisholm was standing approximately 10 to 15 feet away from where the hoses were running. When the UHP

employee turned the pump to full power, at least 36,000 pounds per square inch of water pressure went through the hose. The end fitting having separated from the hose, one of the ends of the disconnected hoses struck Chisholm in the back of the head. He suffered a head injury with a compound depressed skull fracture and a lacerated dura. Although the injury was serious, it was not a debilitating injury. In the wake of the accident, Chisholm suffers no functional limitations precluding him from similarly situated employment.

Chisholm presented claims against the ship for maintenance and cure benefits and for unseaworthiness. The ship demanded that UHP participate in settlement negotiations with Chisholm and pay upwards of $200,000.00 as indemnity. Evidently, UHP believed that the proposed settlement figure exaggerated the total amount of liability in this matter. Thus, UHP rejected the ship's request. The ship had already paid Chisholm the sum of $29,025.93 in maintenance and cure benefits. On June 11, 1996, the ship entered into a settlement agreement and general release for which Chisholm received an additional $200,000.00.

Thereafter, on July 17, 1996, the ship filed a complaint in this Court seeking indemnity for the amounts paid the plaintiff against UHP for breach of implied warranty of workmanlike performance. On December 11, 1996, before the Court heard oral argument on the ship's motion for summary judgment, UHP and the ship then entered into a settlement agreement whereby UHP paid the ship a sum of $229,025.93 in full settlement of the claims for breach of implied warranty of workmanlike performance.

On June 5, 1996, Chisholm filed a separate complaint against UHP and pleaded a common law claim of negligence and an admiralty law claim of breach of implied warranty of workmanlike performance. There was no privity of contract between Chisholm and UHP. Under Virginia law, "privity" is required unless the case involves negligence or a manufacturer or seller of goods. *See* Va. Code Ann. § 8.01–223; Va.Code Ann. § 8.2–

318. This case involves a seller of services, not goods. Moreover, there was no evidence of any kind of negligence on the part of UHP. Therefore, the case did not lie under Virginia law. In part on that basis, UHP moved for summary judgment against Chisholm, who filed a cross motion for partial summary judgment as to liability. At oral argument, Chisholm conceded that there was no evidence to support his common law claim of negligence. Therefore, this Court granted partial summary judgment as a matter of law for the defendant as to negligence.[1]

In his complaint, Chisholm had claimed that the sole basis of jurisdiction was diversity of citizenship pursuant to 28 U.S.C. § 1332. Chisholm did not specifically designate his case as an admiralty case through the procedural mechanism found under Rule 9(h) of the Federal Rules of Civil Procedure. In not doing so, Chisholm believed that he had retained an absolute right to a jury trial for what he conceded was a purely admiralty action. The plaintiff's remaining count of warranty of workmanlike performance is an admiralty claim not dependent upon privity.

Even though he packaged his case as something other than admiralty, Chisholm intentionally sought to take advantage of the special rules and procedures of admiralty law. Chisholm's case does not lie under Virginia law. Thus, Chisholm claimed breach of the warranty of workmanlike performance against UHP on the ground that a stevedore owes an implied warranty of reasonable safety to a ship's employee; a cause of action which is not dependent on contractual privity. *See Sanderlin v. Old Dominion Stevedoring Corp.*, 385 F.2d 79, 81–2 (4th Cir. 1967). Also, Chisholm availed himself of the benefits of admiralty law by requesting prejudgment interest on his warranty claim. Prejudgment interest is routinely granted by the courts in maritime cases.

Chisholm's case proceeded to trial. Since summary judgment had been sustained on the count of negligence, the plaintiff's suit for implied warranty admiralty would not lie under Virginia law. Thus on the first day, the

---

**1.** The Court reserved ruling on UHP's motion for summary judgment as to the claim for workman-like performance, and as to Chisholm's cross-motion for summary judgment.

Court, cognizant of the rights accorded to seamen, decided to hear the case with an advisory jury. The advisory jury was instructed on the sole, remaining question of breach of implied warranty of workmanlike performance, as well as the nature and amount of potential damages. The jury was unaware of the prior settlements. Thereafter, the advisory jury returned a verdict in favor of the plaintiff and fixed the total amount of liability at $90,000.00. The Court did not enter judgment on the advisory jury's verdict. Rather, the Court ordered both Chisholm and UHP to file post-trial briefs.

## II. Analysis

### A. Jury Trial

Chisholm claims that he has an absolute right to a jury trial because he invoked diversity jurisdiction in his complaint, and he pleaded a count of negligence rising under Virginia law. Chisholm concedes that he has no evidence to support his negligence claim, and summary judgment was sustained on that basis. Nevertheless, Chisholm argues that he is entitled to a jury trial on his lone, remaining admiralty claim. The Court disagrees.

■ The crux of the issue before this Court is how to characterize the plaintiff's case. The district courts have exclusive jurisdiction over admiralty and maritime cases, "saving to suitors in all other cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Under the so-called "saving to suitors" clause, a party with a "hybrid" case involving civil and admiralty claims may seek a civil law remedy and secure a jury trial, assuming the existence of an alternate basis of federal jurisdiction.

Of course, a party may elect to preserve the special benefits of admiralty rules and procedures. Rule 9(h) of the Federal Rules of Civil Procedure provides the procedural method through which a party can identify his case as within the admiralty jurisdiction of the federal courts. Rule 9(h) provides in relevant part:

A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not.

Fed.R.Civ.P. 9(h).

The courts are split on whether admiralty jurisdiction is invoked without specific reference to Rule 9(h). The United States Court of Appeals for the Fifth Circuit has decided that a simple statement in the complaint referencing maritime or admiralty law is enough to invoke Rule 9(h). *See Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 345 (5th Cir.1991); *Durden v. Exxon Corp.*, 803 F.2d 845, 848–50 (5th Cir.1986); *T.N.T. Marine Serv., Inc. v. Weaver Shipyards and Dry Docks, Inc.*, 702 F.2d 585, 587–88 (5th Cir. 1983); *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249, 1252–54 (5th Cir.1975).[2]

Alternatively, in the Eastern District of Virginia, Judge Payne has held that invocation of "admiralty jurisdiction requires an identification of the claim as one in admiralty in accordance with Rule 9(h)." *See Lewis v. United States*, 812 F.Supp. 620, 628 (E.D.Va. 1992). The *Lewis* court justified a bright line rule on policy grounds and in light of the Seventh Amendment. According to that court, Rule 9(h) is designed as a "plaintiff-friendly device" for utilizing the special rules and procedures of admiralty law if so desired. *Lewis*, 812 F.Supp. at 628. The court was concerned that without such a litmus test, Rule 9(h) could be turned into a "trap by which plaintiffs can inadvertently forfeit a right to a jury trial which they had otherwise

---

**2.** For example, in *T.N.T.*, the plaintiff had sued a dry dock owner *in personam* and a tug boat owner *in rem*. In his complaint, the plaintiff invoked diversity jurisdiction and included the following statement: "[t]his is also a suit for breach of a maritime contract and for maritime tort." *T.N.T.*, 702 F.2d at 587. Based on the statement and the assertion of an *in rem* claim, the court determined that the plaintiff had effectively invoked admiralty jurisdiction under Rule 9(h) and therefore had no right to a jury trial. *Id.* 702 F.2d at 587–88.

intended to preserve." *Id.* In seeking to avoid that result, the court thought that a bright line view insured a party's constitutional right to a trial by jury where the party did not intend to proceed in admiralty.[3] *Id.*

The United States Court of Appeals for the Fourth Circuit has not directly ruled on this issue. Yet in *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 152 (4th Cir.1995), the Fourth Circuit has held that a jury may decide both admiralty and law claims in a case arising from the same set of operative facts.[4] Even so, the *Vodusek* court made clear that normally, admiralty claims are to proceed with a bench trial, not a jury trial. *Id.* 71 F.3d at 153; *see also Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). In the words of the court, "While the Seventh Amendment guarantees a jury trial in cases 'at common law', no constitutional provision guarantees . . . jury trials for cases tried in equity or in admiralty." *Vodusek,* 71 F.3d at 153. Indeed, when the admiralty rules were fused together with the civil rules in 1966, the drafters intended no significant changes to this traditional rule. *See Romero,* 515 F.2d at 1252; Fed.R.Civ.P. 9(h) and 38(e) and Advisory Committee Notes. The rule would be undermined if, in all cases, a plaintiff who invoked diversity jurisdiction is allowed to receive a jury trial on his admiralty claims simply by alleging a civil claim. Under such a scenario, the plaintiff would be entitled to a jury trial regardless of whether he had the evidence to go forward with his civil claim, whether the parties settled the civil claim, or whether the court dismissed the civil claim.

In fact, the Fifth Circuit has recognized the potential danger in allowing a plaintiff to receive a jury trial under these circumstances. In *Durden v. Exxon Corp.*, the plaintiff invoked diversity jurisdiction and asserted a claim under the Jones Act, which carries a statutory right to a trial by jury. 80 F.3d at 848. The plaintiff also asserted a claim against the vessel *in rem* and a claim against the ship owner *in personam* for the unseaworthiness of the vessel and its negligent operation. *Id.* As the *Durden* court pointed out, however, the plaintiff had already settled his Jones Act claim before filing his original complaint. *Id.* In addition, the plaintiff made no attempt to introduce evidence of the vessel's negligence, which constituted the plaintiff's remaining, non-admiralty claim. Therefore, the trial court directed a verdict against the plaintiff on these issues. *Id.* 803 F.2d at 849, n. 5. In sum, before the plaintiff's case could have reached the jury, all of the remaining claims fell under admiralty law.

The Fifth Circuit was unwilling to grant the plaintiff a jury trial in that situation. In the court's view, the plaintiff had evidenced an intent to proceed in admiralty because he had availed himself of admiralty law. *Durden,* 803 F.2d at 850. The court, moreover, indicated that an intent to proceed in admiralty carries with it the procedural consequences of a non-jury trial *Id.* The plaintiff's complaint did not specifically invoke Rule 9(h) or mention admiralty or maritime law. Yet in the court's view, the plaintiff had gained a significant advantage by suing the vessel *in rem.* *Id.* By doing so, the pilot's

---

**3.** In making this determination, the court distinguished the Fifth Circuit's holdings in *T.N.T.* and *Teal.* First of all, the court pointed out that unlike the complaints in *T.N.T.* and *Teal,* the caption of the plaintiff complaint in *Lewis* contained no simple statement asserting maritime or admiralty claims or invoking § 1333. *Lewis,* 812 F.Supp. at 628. The court further noted that unlike the facts of *Lewis,* the plaintiffs in *T.N.T.* and *Teal* had asserted an *in rem* action against the ship owner that falls exclusively within admiralty jurisdiction. *Id.* Finally, the court noted that contrary to *Teal,* the plaintiff in *Lewis* had demanded a jury trial, which was "inconsistent with an intent to proceed in admiralty." *Id.*

**4.** In *Vodusek,* the plaintiff named different defendants in his complaint. He sued one defendant at law and relied on diversity jurisdiction, and he sued another defendant in admiralty and invoked Rule 9(h). *Id.* 71 F.3d at 151. The plaintiff's complaint included a demand for a jury trial on all claims. *Id.* The court reasoned that submission of both claims to the jury would avoid the problem of duplicative or inadequate damages and would avoid problems of collateral estoppel. *Id.* 71 F.3d at 153–54. In reaching this conclusion, the court implied that the joinder of law and admiralty claims under the federal rules was not designed to ensnare parties into forfeiting their right to elect a jury trial if such is not their intent. *Id.*

negligence is imputed to the vessel in a suit in admiralty. *Id.* Additionally, the court remarked that admiralty suits typically allow recovery of prejudgment interest, which the plaintiff could have sought in his case. *Id.*

■ Given the facts of this case, this Court likewise recognizes that a party's intent to proceed in admiralty is not solely evidenced by writing down "Rule 9(h)" in a complaint. In his complaint, Chisholm indicated diversity of citizenship as the sole basis for jurisdiction. Through artful pleading, he made no express reference to maritime or admiralty law whatsoever. Instead, Chisholm alleged negligence under civil law notwithstanding that there is no evidence to support such a claim. There is no privity among the parties in this matter. In Virginia, the privity requirement is excepted only where the case involves strict economic damage to property or negligence, or involves a manufacturer or seller of goods. Va.Code Ann. § 8.01–223 & § 8.2–318. Because there is no negligence here, and the defendant is a seller of services, Chisholm's action for implied contractual warranty would not lie under Virginia law. Chisholm therefore alleged breach of warranty for workmanlike performance, which is uniformly regarded as a claim under admiralty law not dependent upon privity. *See Ryan Stevedoring Co. v. Pan–Atlantic S S Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Cooper v. Loper,* 923 F.2d 1045, 1048 (3d Cir.1991).

■ Quite obviously, Chisholm has intended to capitalize from the special rules and procedures of an admiralty case. Chisholm has used the substantive rules of admiralty law to establish a cause of action against UHP. Admiralty law imposes an implied warranty of workmanlike performance on the stevedore to complete its work in a reasonably safe and proper fashion. *See Ryan,* 350 U.S. at 133–34, 76 S.Ct. 232. Chisholm has invoked admiralty's extension of the warranty owed by the stevedore to maritime employees of the shipowner; employees like Chisholm. *See Sanderlin,* 385 F.2d at 81–2. Furthermore, Chisholm has availed himself of admiralty law by taking advantage of the special benefits that come from proceeding in admiralty. In particular, Chisholm has moved for prejudgment interest on his workmanlike performance claim on the ground that courts routinely grant such awards in maritime cases.

Ultimately, this proceeding was an admiralty case that could have been decided without a jury. At trial in this matter, the sole question was whether UHP breached its implied warranty of workmanlike performance under admiralty law. Nonetheless, Chisholm protests the idea that a party intending to rely exclusively on admiralty law to prove his admiralty claim must also accept the procedural consequences of a non-jury trial. Chisholm demands an absolute right to a jury trial regardless of whether his civil claim was groundless, and regardless of whether it was subsequently dismissed. Chisholm cleverly pleaded his case in hopes of maximizing the benefits of admiralty law without what he believed were the consequences of a non-jury trial. Nonetheless, Chisholm may not have it both ways. If Chisholm is entitled to a jury trial in this situation, the notion that admiralty cases require bench trials will become the exception, not the rule. This Court will not permit such a result. Where, as here, the case ultimately tried was an admiralty case not impinging on any guarantee of a jury trial, Chisholm has no right to a jury trial.

## B. *Settlement Offset*

In the end, however, Chisholm's demand for a jury trial is inconsequential to the outcome of this case. At trial in this matter, in recognition of the status of seamen, the Court empaneled an advisory jury on the lone question of breach of implied warranty of workmanlike performance, and on the nature and potential amount of damages. The Court accepts and adopts the advisory's verdict as its verdict. The advisory jury determined that UHP violated its breach of implied warranty of workmanlike performance. It fixed the total injuries and damages in this matter at $90,000.00. The Court concludes that the recommended verdict was fair and reasonable for the injuries suffered by the plaintiff.

■ Under admiralty law, the stevedore impliedly warrants the quality of his services

while working aboard a vessel. *Ryan Stevedoring Co.*, 350 U.S. 124, 76 S.Ct. at 236–37. The warranty extends beyond the contracting parties to all foreseeable third parties, including the employees of the shipowner. *Sanderlin*, 385 F.2d at 81–82. Thus, the stevedore's warranted obligation is to supply reasonable safe equipment and to perform its work with reasonable safety. *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 322, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). The stevedore's implied warranty "may be satisfied with less than absolutely perfect equipment." *Id.* Under admiralty law in the Fourth Circuit, the liability standard appears to approach strict liability. *Salter Marine, Inc. v. Conti Carriers and Terminals, Inc.*, 677 F.2d 388, 390 (4th Cir.1982).

■ In this proceeding, UHP breached its implied warranty to supply reasonably safe equipment and to discharge its services with reasonable safety. UHP owned and operated the ultra high pressure blasting pump and hoses used on the ballast tanks of the ULTRAMAX. Moreover, UHP was responsible for their proper operation on the day of the accident. It was the UHP manager supervising the project who noticed a leak in a connector between the two end fittings of the hoses. The UHP manager performed the adjustments to the connector to stop the leak. The UHP manager directed another UHP employee to turn the pump to full power. The parties stipulate that at the manager's direction, at least 36,000 pounds per square inch of water went through the hose causing a hose or an end fitting to fail. One of the ends of the separated hoses struck Chisholm in the back of the head. This does not amount to negligence. However, in the strict liability sense of admiralty applied by this Circuit, the defendant would be liable in admiralty.

■ Chisholm suffered a depressed skull fracture and a lacerated dura demanding medical attention and a short period of convalescence. Yet as the trial evidence makes plain, Chisholm fully recovered from his injuries in a few, short months. Chisholm's inju-

ries were not permanently debilitating, and he suffers from no functional limitations preventing him from working at his old job as a first assistant engineer. He suffers no permanent economic consequences as a result of the accident. Thus, in concurrence with the advisory jury's determination, the Court finds that the defendant breached its warranty of workmanlike performance and assesses the total liability to be $90,000.00.

■ The remaining question before the Court is whether this judgment should be reduced by Chisholm's prior settlement with the shipowner; amounts ultimately paid by UHP. On this issue, the plaintiff insists that he is entitled to recover the advisory jury's judgment as additional damages, notwithstanding the fact that he has been overcompensated already by $110,000.00 ($200,000 − $90,000), without factoring in maintenance and cure. After review of the parties' briefs and relevant authorities, the Court finds that UHP must be credited for the amounts the plaintiff received through settlement.

The Supreme Court has broadly addressed the issue of how a jury's verdict should be calculated to reflect a pretrial settlement. In *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), the Court adopted a "proportionate fault" method, which provides that nonsettling defendants receive settlement credit in the amount of the settling defendants' proportionate share of the responsibility. *See* option 3 of the caveat to Restatement (Second) Torts § 886A. In that sense, the Court emphasized that nonsettling defendants pay only their portion of the total liability.[5] *Id.* 511 U.S. at 221, 114 S.Ct. 1461. In fact, in *McDermott*, the plaintiff had entered into a settlement agreement with certain defendants for $1 million dollars. *Id.* 511 U.S. at 204, 114 S.Ct. 1461. At trial, the jury set the total damages at $2.1 million dollars and apportioned the liability among the settling defendants (30%) and the non-settling defendants (70%). *Id.* 511 U.S. at 209, 114 S.Ct. 1461. Under the circumstances, the Supreme Court refused to apply a credit to the nonsettling defendants

5. Because that is the case, the Court noted that no suits for contribution are permitted, nor are they necessary. *Id.* 511 U.S. at 211–12, 114 S.Ct. 1461.

for the full amount of the prior settlement. *Id.* 511 U.S. at 210, 114 S.Ct. 1461. The Court pointed out that the non-settling defendants were only required to pay their proportionate share of the total harm (70% of $2.1 million). *Id.* 511 U.S. at 210, 114 S.Ct. 1461. Here, the proportionate share of the defendant's liability could not exceed $90,-000.00.

The rule in *McDermott* need not apply to the facts of this case. The United States Court of Appeals for the Fourth Circuit has held that the proportionate share rule of *McDermott* only must apply in cases involving joint tortfeasors. *See Boykin v. China Steel Corp.*, 73 F.3d 539, 544 (4th Cir.1996) (citing *Westinghouse Credit Corp. v. M/V NEW ORLEANS*, 39 F.3d 553, 555–56 (5th Cir.1994)) [6]. In *Boykin*, the court explained that the settling defendant was not a tortfeasor and was not blameworthy for any of the harm. 73 F.3d at 544. The court further noted that the settling defendant and the non-settling defendants were under different legal duties. *Id.* The settling defendant's potential liability was for unseaworthiness, which is a strict liability claim. *Id.* 73 F.3d at 544, n. 4. By contrast, the non-settling defendants' liability was for negligence. *Id.* Under this reasoning, the *Boykin* court found that the proportionate share rule of *McDermott* need not apply. *Id.*

In this case, the ship and UHP are not joint tortfeasors. First, the ship and UHP were under different legal duties to the plaintiff. The ship's liability for unseaworthiness arises by operation of law. *See Osceola, the,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). By contrast, UHP's liability for breach of warranty sounds in contract. *See Ryan,* 350 U.S. at 133–34, 76 S.Ct. 232; *Sanderlin,* 385 F.2d at 81–2. Second, the standard of liability for unseaworthiness and unworkmanlike performance is not based on fault. *See Ballwanz v. Isthmian Lines, Inc.,* 319 F.2d 457 (4th Cir.1963); *Italia Societa,* 376 U.S. at 318, n. 3, 84 S.Ct. 748 (1964). Both would be triggered by the same defective equipment.

Even though *McDermott* need not apply, the Court notes that awarding overcompensation to the plaintiff would vitiate the decision's common sense principle that "nonsettling defendants pay no more than their share of the judgment." 511 U.S. at 209, 114 S.Ct. 1461. Indeed, compared with *McDermott,* the situation in which UHP finds itself is much different. The advisory jury determined the total liability in this matter to be $90,000.00. The ship paid maintenance and cure ($29,025.93) and entered into a settlement with the plaintiff ($200,000.00). UHP then indemnified the ship fully for its prior settlement and maintenance and cure benefits in the amount of $229,025.93. By indemnifying the shipowner, UHP has already paid more than twice the total liability in this case. Under the common sense rule of *McDermott,* UHP must not be made to unjustly enrich the Plaintiff even more.

In any case, the question of whether Chisholm is entitled to damages that greatly exceed his total losses is subject to the "one satisfaction rule". *See MacKethan v. Burrus,* 545 F.2d 1388 (4th Cir.1976); Restatement (Second) Torts § 885(3). Under the one-satisfaction rule, a plaintiff is entitled to only one full recovery for the injuries suffered. *See id.* Thus, the jury's verdict fixing the total harm to the plaintiff must be reduced by amounts received from the settling defendant. *See Strachan Shipping Co. v. Nash,* 782 F.2d 513, 520 (5th Cir.1986). Of course, the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm. *See Westinghouse Credit Corp.,* 39 F.3d at 555; *see also Howard v. General Cable Corp.,* 674 F.2d 351, 358 (5th Cir.1982); *U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1236 (10th Cir.1988).

In this proceeding, the settlement and the judgment represent common damages for injuries sustained by Chisholm while on board the ULTRAMAX. In that sense, the conduct by the shipowner and UHP resulted in a single, indivisible injury to Chisholm. The same defective equipment resulted in the unseaworthiness and the breach of the im-

---

**6.** Furthermore, the *Boykin* Court made clear that a party has not lost its contractual right to in-

demnity in the wake of *McDermott. See Boykin,* 73 F.3d at 541–44.

plied warranty. Certainly, the seaworthiness doctrine and the implied warranty of workmanlike performance may be separate legal theories arising from separate legal sources. *See Sanderlin,* 385 F.2d at 81–2 (commenting that stevedore's warranty is implied by contract and extends to foreseeable third parties). Yet, as with the shipowner and UHP in this case, the legal obligation of reasonable safety for the shipowner and the stevedore is much the same. *See Italia Societa,* 376 U.S. at 322, 84 S.Ct. 748 (analogizing the stevedore's legal obligation to that of a shipowner's duty to supply a seaworthy vessel). Therefore, Chisholm should be entitled to only one recovery for the injuries he has suffered.[7]

The decision in *Boykin* has no bearing on the one satisfaction rule in the Fourth Circuit. In *Boykin,* the estate of a deceased crew member killed in a methane explosion brought suit against the shipowner and certain coal shippers under the Death on the High Seas Act. *Boykin,* 73 F.3d at 541. Before trial, the shipowner settled with the estate for $540,000.00. *Id.* As it turned out, however, the trial court judge found that the shipowner was 0% at fault and the coal shippers were 100% at fault. *Id.* The trial court entered judgment against the coal shippers in the amount of $774,000.00. *Id.* 73 F.3d at 541, n. 1. The trial court also awarded indemnity in favor of the shipowner in the amount of $540,000.00. *Id.* Therefore, the coal shippers were required to pay more than their share of the liability, and the plaintiff received more than the extent of his losses. *Id.* 73 F.3d at 541–42.

Nonetheless, the *Boykin* court declined to invoke the one satisfaction rule to the facts of that case. The reason for this was simple: the coal shippers had not made any claim to a settlement credit in their appellate brief.[8] *Boykin,* 73 F.3d at 545, n. 5. According to the court, that failure "should not be taken as any indication that we think the theory is no longer extant in this circuit or might not have been applied in this case." *Id.*

Indeed, the rule in *McDermott* does not foreclose application of the one satisfaction rule in admiralty cases where a non-settling defendant claims a settlement credit against the total liability. *See McDermott,* 511 U.S. at 219–20, 114 S.Ct. 1461. Rather, in *McDermott,* the Supreme Court declined to invoke the rule given the particular facts of the case, regardless of whether the proportionate credit approach may have overcompensated the plaintiff. *Id.* As justification, the *McDermott* Court emphasized that the non-settling defendants were only required to pay their portion of the total liability. In addition, the *McDermott* Court also based its decision on policy grounds of encouraging settlements and conserving judicial resources. The Court emphasized that the "law contains no rigid rule against overcompensation." 511 U.S. at 219, 114 S.Ct. 1461. The Court opined that any overcompensation to the plaintiff may have been the consequence of an "unwise settlement." *Id.* In the Court's view, a plaintiff should not be penalized for negotiating a favorable settlement, just as a defendant should not be disadvantaged when the plaintiff negotiates a poor one. *Id.* 511 U.S. at 221, 114 S.Ct. 1461.

In this proceeding, however, UHP has already paid out over twice the total damages. In the end, this is the classic situation where the Plaintiff, Chisholm, receives more in settlement than he would have been entitled at trial. Chisholm receives a windfall in the amount of $110,000.00 ($200,000.00 − $90,000.00) for having secured a favorable settlement from the shipowner beforehand. The shipowner obtained the indemnity under its contract with the defendant. In that respect, Chisholm has not been penalized for negotiating a remunerative settlement. If any inequities exist, they may arise from the fact that UHP must endure the financial conse-

---

**7.** The one satisfaction rule ordinarily applies when a damages award is based on a claim for which the defendants are jointly and severally liable. *See Dobson v. Camden,* 725 F.2d 1003 (5th Cir.1984); *Touche Ross,* 854 F.2d at 1235, n. 17; *Dykes v. Raymark Indus., Inc.,* 801 F.2d 810 (6th Cir.1986). Even though that is not the case here, this Court believes that the one-satisfaction rule equally applies to these facts.

**8.** By contrast, in this proceeding, UHP has continually asserted in his pleadings that the plaintiff should not be entitled to a double recovery for his losses.

quences of the shipowner's poor settlement with Chisholm. That settlement grossly overstated UHP's share of liability in this matter. Under these circumstances, Chisholm has already received compensation in an amount greatly in excess of the entire harm. General principles of equity call against the plaintiff receiving any more in damages.[9]

## III. Conclusion

The noble premise behind the seaworthiness doctrine as well as the admiralty warranty of workmanlike performance is that seamen deserve a reasonably safe working environment. In this respect, Congress and the judiciary have developed legal theories and laws occasioned by a powerful interest in broadening the law to compensate injured seamen. *See generally* Jones Act, 46 U.S.C.A.App. § 688 et seq.; *Ryan*, 350 U.S. at 124, 76 S.Ct. 232; *Italia Societa*, 376 U.S. at 315, 84 S.Ct. 748; *See Waterman S.S. Corp. v. Dugan & McNamara, Inc.*, 364 U.S. 421, 425, 81 S.Ct. 200, 202, 5 L.Ed.2d 169 (1960); *Sanderlin*, 385 F.2d at 79.

The unintended consequences of some of these applications of the law create certain anomalies. Armed with the means to sue any and all parties, plaintiff's lawyers driven by contingency fees are induced to litigation and in search of the most compensation for their seamen clients and themselves. Employers are willing to enter into an early settlement and risk an occasional overpayment of an employee, primarily because the expenses and costs of litigation and time outweighs the potential liability. They do so in order to avoid the costs of pretrial motions and formal discovery, let alone the risk and costs of trial. *See* Paul M. Smith, *Economics and Litigation: View from the Inside Looking Out*, 24 Litigation 36, 38 (Summer 1998). Judged by this litigation, the effort is being made to obtain overcompensation for seamen's injuries as an appropriate rule. Through his attorneys, the plaintiff has effectively asserted that he is entitled not to a double recovery for his injuries, but a triple recovery. The plaintiff has already recovered $29,025.93 in maintenance and cure from the ship as well as $200,000.00 in settlement of the claim based on the same injuries. Therefore, he seeks to recoup $290,000.00 in damages for liability that the advisory jury and this Court have established to be $90,000.00 over and above maintenance and cure.

The Court **FINDS** that the plaintiff is not entitled to a jury trial in this purely admiralty case. The plaintiff has clearly intended to proceed in admiralty, even if he has attempted to categorize his case as something else. The plaintiff filed an action in diversity and claimed a common law count of negligence under Virginia law. The plaintiff did not specifically designate his case as an admiralty case under Rule 9(h) of the Federal Rules. This window dressing aside, the plaintiff has plainly sought to proceed in admiralty. There is no privity among the parties in this matter. The only two exceptions to the privity requirement under Virginia law are cases involving negligence or economic damage to property, or involving a manufacturer or seller of goods. The plaintiff has no evidence to support a theory of negligence and the Court dismissed the claim. Moreover, the defendant is a seller of services, not goods. In admiralty law, however, an implied warranty of workmanlike performance theory does not depend on privity between the parties. Accordingly, in his complaint, the plaintiff claimed a maritime count of breach of implied warranty of workmanlike performance. At trial, the sole question was on the plaintiff's admiralty claim of workmanlike performance. The plaintiff has availed himself of the benefits of admiralty law in other ways as well. The plaintiff has sought prejudgment interest on his workmanlike performance claim on the ground that the courts routinely grant such awards in maritime cases.

The Court further **FINDS** that the advisory jury's verdict as to damages was fair and reasonable and adopts it as its own. Mindful of the status accorded to seamen, the Court empaneled an advisory jury to determine the nature and amount of liability in this matter.

---

9. Truly, the question should be whether UHP is entitled to bring a separate suit seeking recovery of amounts paid in excess of its share of the liability ($200,000.00 − $90,000.00 = $110,000.00). However, that issue is not before the Court in this matter.

The advisory jury has concluded that the extent of the plaintiff's injuries merits the sum total of $90,000.00 in damages. The Court **FINDS** as a factual matter under the strict liability doctrine of this Circuit in admiralty that the defendant breached its warranty of workmanlike performance to the plaintiff by providing unsafe equipment, which was the same equipment causing the ship to be unseaworthy. Yet the evidence at trial undoubtedly showed that although severe, the injuries to the plaintiff were not debilitating and caused no functional limitations. The plaintiff is physically able to perform the duties demanded of his old job as a first assistant engineer.

In the end, the ship greatly overcompensated the plaintiff for his injuries. The ship probably achieved substantial savings in litigation costs by settling early. The shipowner also had an extra incentive to settle by virtue of the fact that it had a right of indemnity against the stevedore, UHP. Despite the ship's substantial overpayment, the plaintiff apparently was not satisfied. The plaintiff has sought additional damages from the defendant, even though UHP has already paid over twice the total liability in indemnity to the ship. This Court holds that the plaintiff is not entitled to a triple recovery, but only a single, total recovery. This Court is not a forum for a lottery system and believes in awards for injury, not rewards. Because the advisory jury's award represents the entire liability in this matter, a settlement credit must be applied against those amounts previously recovered by Chisholm. The Court **FINDS** that Chisholm's prior settlement with the ship negates any award of damages. The **CLERK OF COURT** is **DIRECTED** to **ENTER JUDGMENT** for the **DEFENDANT**.

**IT IS SO ORDERED.**