Kenneth BORQUE, Plaintiff,

v.

**D. HUSTON CHARTER SERVICES, INC. d/b/a Tow Boat U.S. Clear Lake, Defendant.**

**Civil Action No. G–06–712.**

United States District Court, S.D. Texas, Houston Division.

Nov. 19, 2007.

Jeffrey T. Roebuck, Roebuck & Thomas PLLC, Beaumont, TX.

Christopher Douglas Collings, Brown Sims PC, Houston, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

GRAY H. MILLER, District Judge.

Pending before the court is defendant D. Huston Charter Services, Inc.'s, motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt.27). The court has considered the parties' pleadings, the summary judgment evidence, and the applicable law. For the following reasons, defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

Plaintiff Kenneth Borque has sued defendant D. Huston Charter Services, Inc. ("Huston"), claiming to be a member of the crew of Towboat U.S. # 6. He asserts claims of negligence under the general maritime law against Huston and, alternatively, claims to be a Jones Act seaman. Borque is a retiree living in Seabrook, Texas. (Dkt.27, Ex. B, Dep.6:10–16, 12:12–13, 14:12). The whole of his previous work experience, as a pipe-fitter, construction worker, and mechanic, was land-based. (*Id.* at 18:17–19:3). Borque has never been a maritime worker. (*Id.*). Donald Wilson is employed as a captain by

defendant Huston d/b/a Tow Boat U.S. Clear Lake ("TBCL"). (Dkt. 36 at 1–2). Prior to the incident at issue, Borque and Wilson had been acquaintances for approximately six years. (*Id.* at 21:20–21, 22:5–7). On August 18, 2006, TBCL contacted Wilson regarding a vessel in need of fuel. (Dkt. 36 at 2). Wilson was unable to contact his usual deckhand. (*Id.*). Consequently, Wilson asked Borque to help with the fuel delivery. (Dkt.27, Ex. B, Dep.44:6–19). Shortly thereafter, aboard TBCL's Towboat U.S. # 6, Wilson and Borque were underway to the location of the distressed vessel. (Dkt. 36 at 1–2). The intended duration of the voyage was approximately two and one half hours. (Dkt. 27 at 13). Wilson operated the vessel and assigned Borque lookout duties. (Dkt. 36 at 2; Dkt. 27, Ex. B, Dep. 46:11–16). On the way to the distressed vessel, Towboat U.S. # 6 allided with the South Jetty, located on Galveston Island. (Dkt.27, Ex. D, Dep.15:9–16:8). The force of the allision threw Borque forward onto the deck, allegedly causing him to suffer neck injuries. (Dkt. 36 at 2).

In his amended complaint, Borque claims that Wilson failed to keep a proper lookout and failed to operate the vessel in a manner consistent with that of an ordinary prudent person. (Dkt. 22 at 2). He also alleges that TBCL failed to properly train its captain and crew members, and that TBCL is vicariously liable for Wilson's negligence. (*Id.* at 2–3). Under his alternative Jones Act negligence claim, Borque alleges entitlement to maintenance, cure, lost wages, attorney's fees, and additional damages caused by TBCL's failure to pay his full maintenance. (*Id.*).

TBCL has moved for summary judgment on all of Borque's claims and asserts that it is entitled to limit liability pursuant to 46 U.S.C. § 30505. (Dkt.27).

## JURISDICTION

Borque's primary cause of action falls under general maritime law. His alternative claim falls under the Jones Act, at 46 U.S.C. §§ 30104 and 30105 (formerly cited as 46 U.S.C.App. § 688). (Dkt. 22 at 2–3). Borque brings the primary claim "on the basis of 28 U.S.C. § 1333, ... pursuant to the admiralty and general maritime laws of the United States." (*Id.* at 1). The "preferred technique is to expressly invoke Rule 9(h)." *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 345 (5th Cir.1991). However, where a "claim is cognizable only in admiralty, it is an admiralty or maritime claim ... whether so identified or not." *Id.; see also* FED.R.CIV.P. 9(h). A claim is cognizable only in admiralty where either "admiralty jurisdiction is exclusive or ... no nonmaritime ground of federal jurisdiction exists." *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 587 (5th Cir.1983). "Under [Fifth Circuit] jurisprudence, a party need not make a specific reference to Rule 9(h) in order to fall under ... admiralty jurisdiction." *Teal*, 933 F.2d at 345. All that is required is "a simple statement asserting admiralty or maritime claims." *Id.* (citing *T.N.T. Marine Serv., Inc.*, 702 F.2d at 588). Borque's complaint is without a "Rule 9(h)" designation. (*Id.* at 1). However, diversity is lacking and no federal statute is plead in the primary claim. (*Id.* at 1–2). This claim, therefore, falls under the court's admiralty jurisdiction because it is cognizable only in admiralty. Borque's jurisdictional allegation sufficiently asserted that this is an admiralty claim. (Dkt. 22 at 1); *see also T.N.T. Marine Serv., Inc.*, 702 F.2d at 587–88.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir.2006). An issue is "material" if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Daniels v. City of Arlington, Tex.,* 246 F.3d 500, 502 (5th Cir.2001), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Only when the movant has discharged this initial burden, does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322, 106 S.Ct. 2548. If the moving party fails to meet its initial burden, then it is not entitled to a summary judgment and no defense to the motion is required. *Id.*

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 309 (5th Cir.2005). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 332 (5th Cir.2005).

### ANALYSIS

### *Borque's Jones Act Seaman Status*

TBCL argues that Borque cannot be considered a seaman due to an inadequate connection to the vessel. (Dkt. 27 at 10–13). In response, Borque claims seaman status because he was working in furtherance of the vessel's mission and 100% of his work for TBCL was performed aboard the vessel. (Dkt. 36 at 5–8).

"The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997) (citing *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). The Supreme Court set out the requirements for seaman status in *Chandris, Inc. v. Latsis,* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). "First, ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Id.* at 368, 115 S.Ct. 2172. "Second, ... a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.*

The first requirement acts as a threshold and is intentionally broad, allowing "[a]ll who work at sea in the service of a ship [to be] *eligible* for seaman status."

*Id.* "The claimant need only show that he/she does the ship's work." *In re Endeavor Marine, Inc.,* 234 F.3d 287, 290 (5th Cir.2000). In the present suit, Borque's duties as lookout and deckhand contributed to the function of Towboat U.S. # 6 as it made its way out to the distressed vessel. He certainly did "the ship's work." Therefore, Borque satisfies the threshold and is eligible for seaman status if the results of the subsequent inquiry show a connection to a vessel in navigation that is substantial in both nature and duration.

■ The parties do not dispute that Towboat U.S. # 6 was a vessel in navigation. The sole remaining issue pertains to the nature and duration of Borque's connection to Towboat U.S. # 6. "[T]he inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." *Papai,* 520 U.S. at 555, 117 S.Ct. 1535. The Fifth Circuit interpreted this passage as "a shorthand way of saying that the employee's connection to the vessel *regularly* exposes him to the perils of the sea." *In re Endeavor Marine, Inc.,* 234 F.3d 287, 291 (5th Cir.2000) (emphasis added). The Supreme Court also noted in *Chandris* that where "the employee performed a significant part of his work on board the vessel on which he was injured, with at least *some degree of regularity and continuity,* the test for seaman status will be satisfied." *Chandris, Inc.,* 515 U.S. at 368–69, 115 S.Ct. 2172 (emphasis added). In other words, "[t]he Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which [those] who go down to [the] sea in ships are subjected." *Id.* at 370, 115 S.Ct. 2172. "Jones Act coverage is confined to seamen, those workers who face *regular* exposure to the perils of the sea." *Papai,*

520 U.S. at 560, 117 S.Ct. 1535 (emphasis added).

■ Borque was not a maritime worker prior to the day of the accident nor was his employment intended to continue beyond the short voyage during which he was injured. This single trip, to take place over the course of a few hours, is not one that exposed him to the perils of the sea with any degree of regularity and continuity. The nature of the Jones Act and its underlying policy compel the conclusion that Borque is not a seaman. TBCL's motion for summary judgment that Borque was not a Jones Act seaman is GRANTED.

### *Wilson's Employment Status*

TBCL argues that Wilson was an independent contractor. As such, TBCL urges that it cannot be held vicariously liable for Wilson's conduct. (Dkt. 27 at 5, 16). To support this argument, TBCL focuses entirely on Texas case law. (*See id.*). In response, Borque also wholly relies on Texas law. (*See* Dkt. 36 at 8–17). However, Borque's suit falls under the court's admiralty jurisdiction and is therefore governed by maritime law. *See Powell v. Offshore Nav., Inc.,* 644 F.2d 1063, 1066 n. 5 (5th Cir.1981). While multiple factors may be considered to determine whether a vessel's master and crew are employees under maritime law, the most important factor is "control." *United States v. W.M. Webb, Inc.,* 397 U.S. 179, 192, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970). The Supreme Court has noted that inherent to the seafaring nature of the activity, maritime workers possess greater discretion than their land-based counterparts. *Id.* Nevertheless, unless the vessel owner completely relinquishes the vessel through a bareboat or demise charter, he may be considered, "under maritime law, to have sufficient

control to be charged with the duties of an employer." *Id.*

■ TBCL has not proffered any evidence to the court as to the existence of a charter agreement. Making all possible inferences in favor of the nonmovant, a genuine issue remains as to whether TBCL, the owner of Towboat U.S. # 6, was the employer-in-fact of Wilson, the vessel's captain. Therefore, there is a genuine issue of material fact regarding Wilson's employment status under maritime law. TBCL's motion for summary judgment on vicarious liability is DENIED.

### *Limitation of TBCL's Liability*

■ TBCL, claiming a lack of privity or knowledge of the circumstances leading to the allision, requests that its liability be limited to the value of Towboat U.S. # 6. (Dkt. 27 at 17). To ascertain whether a shipowner may limit its liability, the court must "[f]irst ... determine what acts of negligence or conditions of unseaworthiness caused the accident." *In re Farrell Lines, Inc.*, 530 F.2d 7, 10 (5th Cir.1976). "Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." *Id.* The plaintiff carries the initial burden of showing that the accident was caused by negligence or unseaworthiness. *In re Hellenic, Inc.*, 252 F.3d 391, 394 (5th Cir.2001). If the initial burden is satisfied, the defendant must then prove a lack of privity or knowledge of the negligence or unseaworthiness. *Id.*

■ Borque alleges that TBCL's failure to provide an adequately trained captain and crew caused the accident. (Dkt. 36 at 24). The duty to provide a compe-

tent master and crew falls upon the vessel owner. *Verrett v. McDonough Marine Serv.*, 705 F.2d 1437, 1444 (5th Cir.1983). Notably, the owner's failure to provide an adequate program to train the crew may, by itself, allow for a finding of privity or knowledge. *Brister v. A.W.I., Inc.*, 946 F.2d 350, 356 (5th Cir.1991) (citing *Hercules Carriers, Inc. v. Florida*, 768 F.2d 1558, 1563 (11th Cir.1985)). TBCL, however, fails to address both the competency of the captain and crew and the existence of training programs or hiring policies. Rather, TBCL's limitation argument only discusses its lack of privity or knowledge regarding an alleged navigational error of Wilson. This argument fails to fully address the negligence or unseaworthiness that potentially caused the allision.[1] (Dkt. 27 at 18). On summary judgment, TBCL bears the initial burden to demonstrate that no genuine issues of material fact exist as to the first element necessary to limit liability. Because TBCL does not proffer any evidence to rebut, in fact ignoring, the allegation that the captain and crew of Towboat U.S. # 6 caused the allision because of inadequate hiring or training policies, TBCL has failed to meet its initial summary judgment burden. TBCL's claim for limitation of liability is DENIED.

### *Borque's Lost Wages*

TBCL argues that Borque's attorney admitted during Borque's deposition that the plaintiff is not seeking lost wages. (Dkt. 27 at 17). It proffers to the court a copy of the complaint with the lost wages portion lined out and initialed by both parties' counsel. (Dkt. 27, Ex. G at 4). Borque does not contest TBCL's position. TBCL's motion for summary judgment on

---

**1.** The court notes that TBCL failed to answer the allegation in Borque's first amended complaint that TBCL failed to properly train its captain and crew members. (Dkt. 22 at 3).

Borque's claim for lost wages is GRANT-ED.

CONCLUSION

For the reasons stated above, the court grants TBCL's motion for summary judgment as to Borque's seaman status and claim for lost wages. The court denies TBCL's motion for summary judgment as to limitation of liability and Wilson's employment status.

Therefore, defendant D. Huston Charter Services, Inc.'s, motion for summary judgment is GRANTED IN PART and DENIED IN PART.